**ALLIED MARKETING GROUP, INC. d/b/a Sweepstakes Clearinghouse, Appellant,**

v.

**PARAMOUNT PICTURES CORPORATION; Paramount Stations Group, Inc.; Joe Tobin; Fernando Martinez; Chuck Whitlock; Barry Nolan; Lisa Gregorisch; and Diane Dimond, Appellees.**

No. 11–01–00240–CV.

Court of Appeals of Texas, Eastland.

March 20, 2003.

S.A. Khoshbin, Michael Wilson, Butrus, Khoshbin Wilson Vogt, Dallas, for appellant.

Rex Heinke, Jessica Weisel, Akin, Gump, Strauss, Hauer & Feld, Los Angeles, CA, Dan Davison, Fulbright & Jaworski, Dallas, William J. Boyce, Fulbright & Jaworski, L.L.P., Houston, for appellees.

Panel consists of: ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

## Opinion

W.G. ARNOT, III, Chief Justice.

Allied Marketing Group, Inc. d/b/a Sweepstakes Clearinghouse (Allied) appeals from the trial court's order granting a traditional summary judgment and a no-evidence summary judgment in favor of Paramount Pictures Corporation; Paramount Stations Group, Inc.; Joe Tobin; Fernando Martinez; Chuck Whitlock; Barry Nolan; Lisa Gregorisch; and Diane Dimond (collectively referred to as Paramount). Allied alleged that Paramount and other defendants defamed it in a *Hard Copy* television show segment about a "sweepstakes scam."[1] Because we conclude that Paramount failed to meet its traditional summary judgment burden and that Allied met its no-evidence summary judgment burden, we reverse the trial court's summary judgment and remand the cause to the trial court for further proceedings.

On February 8, June 17, and July 29, 1996, *Hard Copy* aired a segment about a sweepstakes scam. In the segment, *Hard Copy* producer Chuck Whitlock, accompanied by a video camera operator, went to a number of homes. When people answered

their doors, Whitlock told them that he was with Sweepstakes Clearing House and that they had won $10,000 in a sweepstakes contest. He showed them "Sweepstakes Clearing House" checks made out for $10,000. He then told the "winners" that they had to pay $250 in taxes before he could give them their checks. Each "winner" wrote a $250 check, payable to the I.R.S., as directed by Whitlock. Whitlock then returned the $250 checks to the "winners" and informed them that he was doing a national consumer awareness show for *Hard Copy*. Whitlock stated that "[t]his is a con that's perpetrated all over the country from coast to coast." The segment's narrator stated that con-artists cash the "income tax" checks through a bogus company set up with the initials I.R.S. A *Hard Copy* anchor referred to it as a "nationwide scam."

Paramount intended to use a fictional company name in connection with the sweepstakes company depicted in the segment and thought that "Sweepstakes Clearing House" was a fictional name. However, unknown to Paramount, Allied had been using the name "Sweepstakes Clearinghouse" since 1984 in connection with a direct mail offer business. Sweepstakes Clearinghouse's stated goal "is and always has been to promote, via direct mail, the sale of brand name products at discount prices, in connection with various sweepstakes for both cash and merchandise." It sends out millions of mailers a year to consumers and has conducted various kinds of sweepstakes contests, including a sweepstakes contest that has many

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Allied also named Fox Television Stations, Inc., and NW Communications of Texas, Inc. d/b/a KDFW–TV (Channel 4) as defendants.

At some point, Allied also asserted claims against Peter Brennan. Allied nonsuited these three defendants before the trial court granted Paramount's motion for summary judgment.

similarities to the "scam" depicted on the *Hard Copy* segment.

This is Allied's second appeal from a summary judgment in this matter. In the first appeal, Allied complained that the trial court erred in concluding that Allied was a public figure for the purposes of its defamation claim. In an unpublished opinion, the Dallas Court of Appeals held that Allied was not a public figure and, therefore, reversed the summary judgment and remanded the cause to the trial court for further proceedings. See *Allied Marketing Group, Inc. v. Paramount Pictures Corporation*, No. 05–99–00165–CV, 2000 WL 283834, at *3–*4 (Tex.App.-Dallas, March 17, 2000, pet'n den'd)(not designated for publication).

After remand, Paramount moved for traditional and no-evidence summary judgments, asserting that Allied's defamation claim failed because: (1) the *Hard Copy* segment was not "of and concerning" Allied; (2) even if the *Hard Copy* segment was "of and concerning" Allied, the segment was a "fictional" work, and Paramount did not intend to refer to Allied in the segment; and (3) even if the segment was "of and concerning" Allied, the segment did not defame Allied. Paramount further asserted that, because the defamation claim failed, Allied's other claims also failed. In its first two appellate issues, Allied complains (1) that the trial court erred in granting summary judgment on its defamation claim based on conclusions that the *Hard Copy* segment was not "of and concerning" Sweepstakes Clearinghouse or defamatory and (2) that the trial court erred in granting summary judgment on its other claims.[2]

The trial court did not specify the grounds for summary judgment in its order. Therefore, we will affirm the summary judgment if any of the theories advanced in Paramount's motion for summary judgment are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

■ We will apply the well-recognized standard of review for traditional summary judgments. We must consider the summary judgment evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

■ The trial court must grant a no-evidence motion for summary judgment unless the non-movant produces evidence that raises a genuine issue of material fact on the challenged element of his claim or defense. TEX.R.CIV.P. 166a(i). We review the evidence presented in response to a motion for a no-evidence summary judgment in the same way that we review the evidence presented in support of or in response to a motion for traditional summary judgment, and we accept as true evidence favorable to the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000,

2. Because of our disposition of Allied's first two issues, we need not address Allied's third, fourth, and fifth issues. TEX.R.APP.P. 47.1. In its third, fourth, and fifth issues, Allied asserts that the trial court erred in considering new summary judgment grounds and evidence presented in Paramount's reply brief, that the trial court erred by denying its motion for partial continuance of the summary judgment hearing, and that the trial court erred in allowing Paramount's improper and inadmissible evidence into the record.

pet'n den'd). A no-evidence summary judgment is improper if the non-movant presents more than a mere scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Hight v. Dublin Veterinary Clinic, supra* at 619. More than a mere scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Hight v. Dublin Veterinary Clinic, supra* at 619 (citing *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706 (Tex.1997), *cert. den'd,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998)).

▮ The plaintiff in a defamation case must establish four elements: (1) the defendant published a factual statement; (2) that was defamatory; (3) and concerned the plaintiff; (4) while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *ABC, Inc. v. Shanks,* 1 S.W.3d 230, 234 (Tex.App.-Corpus Christi 1999, pet'n den'd); *Provencio v. Paradigm Media, Inc.,* 44 S.W.3d 677, 680–81 (Tex.App.-El Paso 2001, no pet'n). To satisfy the third element, the plaintiff must show that the allegedly defamatory publication was "of and concerning" it. It is not necessary that the plaintiff be named in the publication. *Newspapers, Inc. v. Matthews,* 161 Tex. 284, 339 S.W.2d 890, 894 (1960). A publication is "of and concerning" the plaintiff if persons who knew and were acquainted with the plaintiff understood from viewing the publication that the allegedly defamatory matter referred to the plaintiff. *Newspapers, Inc. v. Matthews, supra.* The issue depends on whether persons who knew or knew of the plaintiff could have reasonably understood that the publication referred to the plaintiff. See *Davis v. R.K.O. Radio Pictures, Inc.,* 191 F.2d 901, 904 (8th Cir.1951). Because the test is based on the reasonable understanding of the viewer of the publication, it is not necessary for the plaintiff to prove that the defendant intended to refer to the plaintiff. See *Ruzicka v. Conde Nast Publications, Inc.,* 999 F.2d 1319, 1322 (8th Cir.1993); *New England Tractor–Trailer Training of Connecticut, Inc. v. Globe Newspaper Company,* 395 Mass. 471, 480 N.E.2d 1005, 1009 (1985). The RESTATEMENT (SECOND) OF TORTS § 564 (1977) provides: "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer."

Thus, the "of and concerning" issue is whether persons viewing the *Hard Copy* segment who knew of Sweepstakes Clearinghouse could reasonably have understood that the segment referred to Sweepstakes Clearinghouse.[3] We view the summary judgment evidence in the light most favorable to Allied to make this determination. In the introduction to the segment, a *Hard Copy* anchor stated that "Hard Copy goes undercover to expose the great sweepstakes scam." The *Hard Copy* "scam" sweepstakes was similar to actual sweepstakes contests in which checks are delivered to the winners at their homes. During the segment, Whitlock told two of the "winners" that he was with "Sweepstakes Clearing House" and

3. Paramount contends that the entire segment was fiction. We disagree for the reasons discussed below, but we note that the "of and concerning" test for fictional works is essentially the same. The test is whether persons who knew or knew of the plaintiff could reasonably have understood that the fictional character was a portrayal of the plaintiff. See *Middlebrooks v. Curtis Publishing Company,* 413 F.2d 141, 142 (4th Cir.1969); *Fetler v. Houghton Mifflin Company,* 364 F.2d 650, 651 (2nd Cir.1966); *Davis v. R.K.O. Radio Pictures, Inc., supra* at 904.

showed all three "winners" $10, 000 "Sweepstakes Clearing House" checks. After the "winners" gave him their $250 checks payable to the I.R.S., Whitlock informed them that he was doing a national consumer awareness show for *Hard Copy.* Whitlock stated that "this is a con that's perpetrated all over the country from coast to coast." Whitlock testified that he wanted the *Hard Copy* "scam" to be "close to the real scams that would take place in the real world." A *Hard Copy* anchor referred to the "scam" as a "nationwide scam." The segment did not indicate that "Sweepstakes Clearing House" was a fictional company.

The summary judgment evidence established that Allied has been using the name Sweepstakes Clearinghouse since 1984. Sweepstakes Clearinghouse sends millions of mailings a year to consumers attempting to sell various products. It also conducts various direct mail sweepstakes contests offering contestants chances to win cash and merchandise. Many of the mailed items include the Sweepstakes Clearinghouse name: sweepstakes entry forms, envelopes, credit vouchers, award checks, and merchandise shipment materials. One of its sweepstakes contests is similar to the sweepstakes "scam" depicted on the *Hard Copy* segment. About once a year for the last ten years, Sweepstakes Clearinghouse has conducted a sweepstakes contest with a grand prize of $10,000. Sweepstakes Clearinghouse has awarded the $10,000 grand prizes by personally delivering $10,000 checks with the Sweepstakes Clearinghouse name on them to the winners at their homes.

The above summary judgment evidence established that *Hard Copy's* fictional company name, "Sweepstakes Clearing House," was identical to that of the real company, Sweepstakes Clearinghouse. *Hard Copy* used the name in connection with a depiction of a sweepstakes "scam." Sweepstakes Clearinghouse is actually in the business of conducting sweepstakes contests, one of which is very similar to *Hard Copy's* "scam" sweepstakes. *Hard Copy* did not indicate to its viewers that "Sweepstakes Clearing House" was a fictional company. Given that *Hard Copy* used an identical company name and used the name in connection with the type of business conducted by the actual company, we find that *Hard Copy's* viewers who knew of Sweepstakes Clearinghouse through receiving mailings from it could have reasonably understood that the *Hard Copy* segment referred to it. As such, summary judgment was not proper on the "of and concerning" issue. Paramount argues that, because the segment was "an obvious work of fiction," no viewer could have reasonably understood that it referred to Sweepstakes Clearinghouse. Paramount relies on a number of authorities to support its contention. See *Middlebrooks v. Curtis Publishing Company, supra* at 143; *Clare v. Farrell,* 70 F.Supp. 276 (D.Minn.1947); *Aguilar v. Universal City Studios, Inc.,* 174 Cal.App.3d 384, 219 Cal.Rptr. 891 (1985). The *Middlebrooks* court explained that "names of characters portrayed in ... short stories ... and other obvious works of fiction are normally understood by all reasonable men as not intended to depict or refer to any actual person."

This case is distinguishable. While Paramount intended to use a fictional company name and did depict a "scam" as opposed to an actual sweepstakes contest, these facts do not make the segment an "obvious work of fiction." Paramount considered *Hard Copy* to be a news show. *Hard Copy* identified the segment as an "undercover" report about a "nationwide scam." Whitlock testified that the segment was a "news report on a particular

type of scam." These statements do not describe a work of fiction. They describe a news report about an actual problem: sweepstakes scams. Viewed in its entirety, the segment was not a fictional work.

 Additionally, the many similarities between the fictional "Sweepstakes Clearing House" depicted in the segment and Sweepstakes Clearinghouse distinguish this case from Paramount's authorities. Paramount ignores the similarities in arguing that "[b]ecause the only similarity here is the incidental use of the name Sweepstakes Clearinghouse any conclusion that the fictional broadcast portrayed Allied is per se unreasonable." The name was not the only similarity. The segment used "Sweepstakes Clearing House" in connection with the very type of business that Sweepstakes Clearinghouse conducted, sweepstakes contests. Additionally, *Hard Copy's* "scam" was similar to an actual sweepstakes contest conducted by Sweepstakes Clearinghouse in which a check was hand-delivered to the winner at the winner's home. Even if the segment was considered to be fiction, *Hard Copy's* viewers could have reasonably concluded that the segment referred to Sweepstakes Clearinghouse.

Allied presented deposition testimony of a *Hard Copy* viewer who understood that the segment referred to Sweepstakes Clearinghouse. When the viewer heard the name "Sweepstakes Clearing House" in the segment, he remembered receiving a letter from Sweepstakes Clearinghouse the day before. He looked through his trash and found the letter. He thought the segment showed Sweepstakes Clearinghouse committing a fraudulent activity. He filed a complaint with the police against Sweepstakes Clearinghouse. Paramount argues that this viewer's understanding was "unreasonable"; however, the similarities between *Hard Copy's*

"Sweepstakes Clearing House" and the actual Sweepstakes Clearinghouse defeat Paramount's argument.

Allied also presented evidence showing that Sweepstakes Clearinghouse's customer response rates to its mailings declined and its profits declined after the *Hard Copy* broadcasts. This evidence was relevant to the issue of whether ordinary viewers understood that the segment referred to Sweepstakes Clearinghouse. Viewing this evidence in the light most favorable to Allied, it supports Allied's claim that at least some of *Hard Copy's* viewers understood that the segment referred to Sweepstakes Clearinghouse.

Paramount asserted that it was entitled to summary judgment, even if the segment was "of and concerning" Allied, because the segment was a "fictional" work and Paramount did not intend to refer to Allied in the segment. This argument fails for two reasons. First, the segment was not fictional. Second, the plaintiff in a defamation case is not required to prove that the defendant intended to refer to it. Rather, an allegedly defamatory publication is "of and concerning" a plaintiff— even in cases involving fictional works—if persons who knew or knew of the plaintiff could reasonably have understood that the fictional character was a portrayal of the plaintiff. See *Middlebrooks v. Curtis Publishing Company, supra* at 142; *Fetler v. Houghton Mifflin Company, supra* at 651; *Davis v. R.K.O. Radio Pictures, Inc., supra* at 904.

 Paramount also asserted that it was entitled to summary judgment, even if the segment was "of and concerning" Allied, because the segment did not defame Allied. Whether a publication is capable of a defamatory meaning is initially a question of law for the court. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex.2000)(citing *Musser v. Smith Protec-*

*tive Services, Inc.,* 723 S.W.2d 653, 655 (Tex.1987)). To determine this issue, the trial court construes the allegedly defamatory publication as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the publication. *Turner v. KTRK Television, Inc., supra; Carr v. Brasher, supra* at 570; *Musser v. Smith Protective Services, Inc., supra.* If the publication is ambiguous or of doubtful import, the jury must determine the publication's meaning and the effect the publication has on an ordinary reader. If a defamatory meaning *may* exist, then the publication is considered ambiguous, and the court must allow the jury to determine whether an ordinary reader would perceive the statement as defamatory. *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.,* 708 F.2d 944, 948 (5th Cir.1983)(applying Texas law); *Musser v. Smith Protective Services, Inc., supra.* Thus, if a publication is capable of two interpretations, one of which is defamatory, the trial court is required to submit the publication to the jury. *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc., supra* at 948.

■ Therefore, the issue is whether the *Hard Copy* segment was reasonably capable of a defamatory meaning. The *Hard Copy* segment used Sweepstakes Clearinghouse's name in connection with a sweepstakes "scam." Sweepstakes Clearinghouse actually conducted sweepstakes contests, one with many similarities to the "scam" depicted in the segment. While Paramount asserts that the segment was not defamatory because it only commented about con-men "who adopt the trappings of legitimate sweepstakes companies as a means of perpetrating fraud," the segment did not indicate—by statements or otherwise—that "Sweepstakes Clearing House"

was a legitimate company. Nor did the segment clearly indicate—by statements or otherwise—that it was intended only as a comment about con men or that it was not intended as a negative comment about "Sweepstakes Clearing House." Paramount relies on a statement in the segment that "the con-artist outfits a van to look like the prize van everyone sees on the TV commercials for those legitimate sweepstakes." This statement was accompanied by video of a van with the Publishers Clearing House name on it. However, the segment did not associate any other sweepstakes company, by name or otherwise, with "legitimate sweepstakes."

■ Paramount's interpretation of the segment is not the only possible interpretation. One reasonable interpretation of the segment is that Sweepstakes Clearinghouse was a sham company that "con men" created for the purposes of engaging in sweepstakes scams. As such, ordinary viewers of the segment could reasonably perceive that Sweepstakes Clearinghouse was engaging in a fraudulent activity—a sweepstakes scam. As set forth above, Allied presented evidence that a viewer did perceive that Sweepstakes Clearinghouse was engaging in the scam. Statements that would ordinarily tend to injure a plaintiff's business reputation, resulting in financial injury, are defamatory. *Granada Biosciences, Inc. v. Forbes, Inc.,* 49 S.W.3d 610, 616 (Tex.App.-Houston [14th Dist.] 2001, pet'n den'd). Statements charging a sweepstakes company· with engaging in sweepstakes fraud would ordinarily tend to injure the company's business reputation and result in financial injury to it. The segment is reasonably capable of a defamatory meaning.

The trial court erred in granting summary judgment on Allied's defamation

claim.[4] Because the trial court granted summary judgment on Allied's other claims on the ground that Allied's defamation claim failed, the trial court erred in granting summary judgment on the other claims. We sustain Allied's first and second issues.

Paramount raised an additional ground for summary judgment in its reply brief to Allied's response to the motion for summary judgment. Paramount asserted that the Dallas Court of Appeals decided the "of and concerning" issue against Allied in the earlier appeal and that, therefore, the "law of the case" precluded Allied's claim that the segment was "of and concerning" Sweepstakes Clearinghouse. The "law of the case" doctrine provides that questions of law decided in an appeal to a court of last resort govern that case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986); *Russell v. City of Bryan*, 919 S.W.2d 698, 703–04 (Tex.App.-Houston [14th Dist.] 1996, writ den'd).

The issue in the first appeal was whether Allied was a public figure for the purpose of its defamation claim. *Allied Marketing Group, Inc. v. Paramount Pictures Corporation, supra* at *2. The Dallas Court of Appeals explained that, in defamation cases, if the plaintiff is a public official or a public figure, the plaintiff must establish a higher degree of fault to prove defamation. The plaintiff must prove that the defendant acted with actual malice, that is, with knowledge that the defamatory publication was false or with reckless disregard of whether it was false or not.

*Allied Marketing Group, Inc. v. Paramount Pictures Corporation, supra* at *2.

Whether a party is a public figure is a matter of constitutional law for the court to decide. *Allied Marketing Group, Inc. v. Paramount Pictures Corporation, supra* at *2. The court explained that there are two types of public figures: general purpose and limited purpose public figures. The court concluded that Allied was neither type of public figure: "We hold the summary judgment evidence established as a matter of law that Allied was neither a general purpose or limited purpose public figure." *Allied Marketing Group, Inc. v. Paramount Pictures Corporation, supra* at *3–*4. In support of its "law of the case" argument, Paramount relies on statements that the Court made during its analysis of the third element of the test for determining whether a party is a limited purpose public figure: "[T]he segment had nothing to do with Allied and depicted a fictional door-to-door sweepstakes scam." *Allied Marketing Group, Inc. v. Paramount Pictures Corporation, supra* at *3. The court made these statements in the context of determining that Paramount could not show that the segment was germane to Allied's participation in a controversy, the third element of the limited purpose public figure test. Because Paramount did not know that Allied existed, Paramount could not do a segment about Allied. Thus, from Paramount's perspective, "the segment had nothing to do about Allied." Because "the segment depicted a fictional door-to-door sweepstakes scam," Paramount could not establish that it was

4. We note that Paramount objected to portions of Allied's summary judgment evidence and that Allied objected to portions of Paramount's summary judgment evidence. The summary judgment evidence referred to in this opinion raised fact issues precluding summary judgment. Therefore, we do not address Paramount's or Allied's objections to any evidence that is not referred to in the opinion. Allied and Paramount did not obtain rulings on their objections from the trial court. Because it is not necessary for the disposition of this appeal, we do not address whether the parties waived their objections by failing to obtain a ruling.

germane to Allied's participation in an actual controversy. Thus, Paramount could not establish that Allied was a limited purpose public figure.

The court did not decide the "of and concerning" issue; the issue was not even before the court. The "of and concerning" issue and the third element of the limited purpose public figure test involve different inquiries. The "of and concerning" inquiry is whether viewers of the publication understood that it referred to the plaintiff; the limited purpose public figure test does not take into consideration the understanding of the publication's viewers. The court decided one issue in Allied's earlier appeal: that Allied was not a public figure. The "law of the case" does not prevent Allied's claim that the segment was "of and concerning" Sweepstakes Clearinghouse.[5]

We reverse the judgment of the trial court and remand the cause to the trial court for further proceedings.

---

5. Paramount also argues that the doctrine of judicial estoppel prevents Allied from claiming that the segment was "of and concerning" Sweepstakes Clearinghouse. Paramount's argument is based on the claim that Allied's position in this appeal—that the segment is "of and concerning" Sweepstakes Clearinghouse—is inconsistent with the position that Allied took in the first appeal. However, Allied has never taken the position that the segment was not "of and concerning" Sweepstakes Clearinghouse.