COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





CHRISTOPHER HOUSEMAN,


 Appellant,


v.


PUBLICACIONES PASO DEL NORTE,
S.A. DE C.V. D/B/A EL DIARIO DE
JUAREZ,


 Appellee. 
§


 


§


 


§


 


§


 


§



§

No. 08-06-00034-CV



Appeal from


327th District Court


of El Paso County, Texas


(TC # 2004-5050)




O P I N I O N



 Christopher Houseman appeals a summary judgment granted in favor of Publicaciones Paso
Del Norte, S.A. DE C.V. d/b/a El Diario de Juarez, (El Diario). Because we conclude that the
publication as a matter of law was not defamatory as to him, we affirm.

FACTUAL SUMMARY


 El Diario is a Mexican corporation that publishes a Spanish language newspaper, El Diario
de Juarez. At the time in question, El Diario distributed some 60,000 daily copies in Juarez, Mexico
and 5,000 in El Paso. On November 17, 2004, El Diario published a news article with the headline
"Immigration Agent Accused of Drug Trafficking."

 Mcallen, [sic] Texas--According to official documents made public yesterday, a US
Customs agent is accused of conspiring to let truckloads of marihuana coming from
Mexico pass through his lane at one of the international bridges.


 The case investigators state that Lizandro Martinez, a 42-year-old agent assigned at
the Progreso International Bridge, accepted money from drug traffickers in return for
not inspecting at least seven vehicles during the past year. Each vehicle contained
hundreds of pounds of marihuana.

 

 The accusation, dated November 9, is the result of a year of investigations that led
to the seizure of more than ten thousand pounds of the illegal substance.

 

 Martinez and Roberto Dominguez, 43 years of age, are charged with conspiracy to
import and possess with intent to distribute more than one thousand kilograms of
marihuana. Likewise, they are facing eight counts of illegally importing and/or
possessing with intent to distribute marihuana.

 

 Dominguez is accused of being the ringleader drug trafficking organization that
introduced the shipment through the bridge and into a 'staging area' located within
one thousand feet of Progreso High School. At this point, the accused allegedly
transferred the drugs to other vehicles and transported them to storage houses
scattered throughout the Rio Grande Valley. 

 

 Another six people are named in the file and face several charges for their
participation in the organization.


 Each one of the accused faces a sentence of 10 years to life in prison and a fine of up
to four million dollars on the charges of conspiracy. The drug trafficking charges
will carry punishments of up to life in prison as well as additional fines.


Below the headline and next to the article is a picture of Houseman working at a border check point. 
He is in uniform, walking with a police dog, and surrounded by vehicles. According to Houseman,
the photograph represented him and his dog at work searching for narcotics on the Bridge of the
Americas, an international bridge in El Paso. The photograph was a file photo that was to have been
used in conjunction with a news story about his drug-sniffing dog. 

 On November 20, El Diario re-published the photograph and included a note under the
picture:

 On November 17th, El Diario published this photograph on page 9A along with an
article regarding an immigration agent who had been accused of drug traffic. The
name of the agent who was accused is Lizandro Martinez, from Progresso. The agent
who appears on the photograph was not identified as being the agent accused, and is
not Mr. Lizandro Martinez, but an outstanding officer from El Paso. El Diario is
republishing the photograph along with this information as requested by him.


 Houseman eventually filed suit against El Diario, alleging he was defamed by the newspaper
under the theory of libel per se. Houseman contends the article suggested he was involved in
narcotrafficking and that he was associated with the conspiracy described in the article. In response,
El Diario filed both a traditional and a no-evidence motion for summary judgment alleging that as
a matter of law the publication was not defamatory as to Houseman. (1) Where, as here, the trial
court's judgment does not specify the ground or grounds relied upon for its ruling, the summary
judgment must be affirmed if any of the theories advanced is meritorious. Aguilar v. Morales, 162
S.W.3d 825, 834 (Tex.App.--El Paso 2005, pet. denied), citing Carr v. Brasher, 776 S.W.2d 567,
569 (Tex. 1989).

TRANSLATIONS


 We pause first to note that the record does not contain an official translation of the caption. 
A translation of the article was read by Lourdes Ortiz, the co-editor of El Diario, during her
deposition. El Diario also attached a translation as part of its summary judgment evidence, which
does not substantially conflict with Ortiz's testimony. But with regard to the caption, a dispute arose
as to whether it stated "agent" or "an agent." Jose Cuc, the editor of Section A of the newspaper,
read the caption during his deposition: 

 Q: [Appellant's Attorney]: What does the foot of the photo say?


 A: It says, 'The agent goes through the autos, cars, helped by a police dog.'


 [Appellee's Attorney]: Objection. I'm getting a different interpretation, so --


 [Interpreter]: Let's go through it.


 [Ms. Acevedo]: It's not 'the agent.'


 [Mr. Rodriguez]: It's 'an agent.'


 [Ms. Acevedo]: You said 'agente' --


 [Interpreter]: Well, its 'agent' or 'an agent.'


 [Appellant's Attorney]: Let's go off the record. 


(Off the record discussion.)



 Q: [Appellant's Attorney]: Mr. Cuc, what does the foot of the photo say?


 A: 'Agent looks through the cars aided by a police dog.'


* * * * *



 Q: [Appellee's Attorney]: I have just a couple of questions. Mr. Cuc, you were
asked earlier by Mr. Houseman's lawyer about the text beneath the photo the
Exhibit 1, correct?


 A: Yes.


 Q: My question is -- and do you recall there was some discussion about the
translation of your answer?


 A: That's right.


 Q: My question is, looking at the text beneath the photograph in Exhibit 1, does it
say -- to your understanding, does it say 'an agent' or 'the agent' or does it say neither
of those?

 

 A: It's an agent.


 [Appellee's Attorney]: Pass the witness.


 Q: [Appellant' Attorney]: Does it say 'una agente'?


 A: No. That's what is understood. 'Agent searches.'


 Q: Does it have the word 'una' in the caption?


 A: No. 


STANDARD OF REVIEW


 In reviewing a traditional summary judgment, we must determine whether the successful
movant in the trial court carried the burden of showing that there is no genuine issue of material fact
and that judgment should be granted as a matter of law. See Tex.R.Civ.P. 166a(c); Lear Siegler, Inc.
v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Martin v. McDonnold, 2006 WL 3517854 at *2 -3 
(Tex.App.--El Paso 2006, Dec. 7, 2006, no pet. h.). The question on appeal is not whether the
summary judgment proof raises fact issues as to required elements of the movant's cause or claim,
but whether the summary judgment proof establishes, as a matter of law, that there is no genuine
issue of material fact as to one or more elements of the movant's cause or claim. Martin, 2006 WL
3517854 at *2. We must consider the evidence in the light most favorable to the non-movant and
resolve any doubt in the non-movant's favor. Western Investments, Inc. v. Urena, 162 S.W.3d 547,
550 (Tex. 2005).

 A no-evidence motion for summary judgment is essentially a pretrial directed verdict and we
apply the same legal sufficiency standard of review. King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
750 (Tex. 2003). The moving party must specifically state the elements as to which there is no
evidence. Gray v. Woodville Health Care Center, 225 S.W.3d 613 (Tex.App.--El Paso 2006, pet.
denied); see Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce summary
judgment evidence raising a genuine issue of material fact regarding each element challenged. Id. 
The evidence is reviewed in the light most favorable to the non-movant and we must disregard all
contrary evidence and inferences. King Ranch, 118 S.W.3d at 751. A genuine issue of material fact
is raised if the non-movant produces more than a scintilla of evidence regarding the challenged
element. Id. Less than a scintilla of evidence exists if the evidence is so weak as to create no more
than a mere surmise or suspicion. But when the evidence rises to a level that enables reasonable
minds to differ in their conclusions, then more than a scintilla of evidence exists. Id.

DEFAMATION


 To establish a defamation claim, a plaintiff must demonstrate: (1) the defendant published
a factual statement; (2) that was capable of defamatory meaning; (3) concerning the plaintiff; (4)
while acting with either negligence, if the plaintiff is a private individual, or actual malice, if the
plaintiff is a public figure or public official, concerning the truth of the statement. See WFAA-TV,
Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998); Provencio v. Paradigm Media, Inc., 44 S.W.3d
677, 680-81 (Tex.App.--El Paso 2001, no pet.). Libel is:

 [A] defamation expressed into written or other graphic form that tends to blacken the
memory of the dead or that tends to injure a living person's reputation and thereby
expose the person to public hatred, contempt or ridicule, or financial injury or to
impeach any person's honesty, integrity, virtue, or reputation or to publish the natural
defects of anyone and thereby expose the person to public hatred, ridicule, or
financial injury.


Tex.Civ.Prac.&Rem.Code Ann. § 73.001 (Vernon 2005). A statement that is libel per se is so
obviously hurtful that it does not require proof of injury in order to be actionable. Columbia Valley
Regional Medical Center v. Bannert, 112 S.W.3d 193, 199 (Tex.App.--Corpus Christi 2003, no pet.);
Knox v. Taylor, 992 S.W.2d 40, 50 (Tex.App.--Houston [14th Dist.] 1999, no pet.). A false
statement that charges a person with the commission of a crime is libelous per se. Leyendecker &
Assocs., Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex. 1984).

 Houseman contends the article was defamatory because it created the impression that he was
the corrupt customs agent. A plaintiff may bring a claim for defamation when "discrete facts,
literally or substantially true, are published in such a way that they create a substantially false and
defamatory impression by omitting material facts or juxtaposing facts in a misleading way." Turner
v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000). Although all the statements in a
publication may be true when read in isolation, the publication may convey a substantially false and
defamatory impression by omitting material facts or suggestively juxtaposing true facts. Id.
According to Houseman, the placement of his photo in conjunction with the headline, caption, and
article created the impression to a person of ordinary intelligence that he was Lizandro Martinez, the
accused customs agent. Consequently, we must determine whether the publication was capable of
defamatory meaning because it created the false impression that Houseman was the accused agent. 

CAPABLE OF DEFAMATORY MEANING?


 Whether a publication is capable of defamatory meaning is initially a question of law for the
court. Allied Marketing Group, Inc. v. Paramount Pictures Corporation, 111 S.W.3d 168, 175
(Tex.App.--Eastland 2003, pet. denied). Allegedly defamatory statements must be construed as a
whole, in light of the surrounding circumstances, based upon how a person of ordinary intelligence
would perceive the publication. Allied, 111 S.W.3d at 176; Provencio, 44 S.W.3d at 681. If a
defamatory meaning may exist, then the publication is considered to be ambiguous and a jury must
be allowed to determine whether an ordinary reader would perceive the statement as defamatory. 
Allied, 111 S.W.3d at 176, citing Golden Bear Distributing Systems of Texas, Inc. v Chase Revel,
Inc., 708 F.2d 944, 948 (5th Cir. 1983)(applying Texas law). The opinion of the plaintiff has no
bearing on whether the words or statements are actually defamatory. Harmon v. Corinthian
Broadcasting, No. C14-86-00168-CV, 1986 WL 9844 *2 (Tex.App.--Houston [14th Dist.] Aug. 21,
1986)(not designated for publication). Where a publication is capable of two interpretations, one
of which is defamatory, summary judgment is improper. Id. 

 El Diario has not addressed the precise question of whether the publication was capable of
defamatory meaning. While we have enumerated four elements of a defamation case, El Diario has
collapsed the second and third elements into one: "Houseman, as the plaintiff, must first establish
that El Diario published a factual statement that was defamatory as to him." We believe that the
publication is indeed capable of two interpretations: (1) the unidentified agent in the photograph was
indeed Lizandro Martinez or his co-conspirator; or (2) Houseman's photograph was placed in the
article by mistake. See Express Pub. Co. v. Isensee, 286 S,W. 926, 928 (Tex.Civ.App.--Austin 1926,
no writ)("In the necessary haste and volume of detail required to issue the editions of large daily
newspapers, mistakes in the placing and arrangement of type forms, captions, or pictures are not
infrequent. Readers of large dailies are no longer surprised at seeing a caption or headline on one
subject followed by an article entirely foreign to it; or even to see an article on some person
accompanied by the picture of someone else, inserted by mistake."). Because the publication was
ambiguous, it was capable of defamatory meaning. We turn now to the question of whether the
publication was defamatory as to Houseman.

OF AND CONCERNING THE PLAINTIFF?


 A publication is "of and concerning the plaintiff" if persons who knew and were acquainted
with him understood from viewing the publication that the defamatory matter referred to him. 
Allied, 111 S.W.3d at 173, citing Newspapers, Inc. v. Matthews, 161 Tex. 284, 339 S.W.2d 890, 894
(Tex. 1960). It isn't necessary that the plaintiff be named in the publication. Id. Nor must the
plaintiff prove that the defendant intended to refer to him. Id., citing Ruzicka v. Conde Nast
Publications, Inc., 999 F.2d 1319, 1322 (8th Cir. 1993). "A defamatory communication is made
concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that
it was intended to refer." Resatement (Second) of Torts § 564 (1977). The false statement must
point to the plaintiff and no one else. Newspapers, Inc., 339 S.W.2d at 894. A true account that
does not create a false impression by omitting material facts or suggestively juxtaposing them is not
actionable, regardless of the conclusions that people may draw. Turner, 38 S.W.3d at 118. But by
omitting key facts and falsely juxtaposing others, a publication may be both false and defamatory. 
Id.

 Houseman contends that it is his face and image that El Diario tied to drug trafficking, not
his name. Those who see his face in the photo alongside the drug trafficking article and then
encounter him, presumably on the bridge, will identify him as the corrupt officer, exposing him to
the hatred, ridicule, and contempt that a defamation suit is designed to address. El Diario counters
that because Houseman was not specifically named in the article and his image is not otherwise
famous or widely known, the publication was not "of and concerning" Houseman as far as the
general public is concerned. And for those folks who knew Houseman, the publication was not
defamatory because, objectively, these hypothetical readers learned by reading the article that the
narcotrafficker was Lizandro Martinez, not Houseman. We agree that the appropriate inquiry is
objective, not subjective. "Thus, the question is not whether some actual readers were mislead, as
they inevitably will be, but whether the hypothetical reasonable reader could be." New Times, Inc.
v. Isaacks, 146 S.W.3d 144, 157 (Tex. 2004), cert. denied, 545 U.S. 11105,125 S.Ct. 2557, 162
L.Ed.2d 276 (2005).

 We find a recent federal court decision particularly helpful in our analysis. See In re Cable
News Network and Time Magazine "Operation Tailwind" Litigation, MDL Case No. 1257, 2006
WL 2711744 (N.D.Cal. Sept. 21, 2006)(not designated for publication). There, the plaintiffs' claims
of defamation arose from media reports in June 1998 about a secret mission known as "Operation
Tailwind" which was mounted during the Vietnam War. The first report, aired on a magazine-style
television show called NewsStand broadcast by CNN, described a military operation in Laos carried
out by Studies and Observation Group (SOG) forces and mercenaries with military air support. The
program announced that the target of the mission was a group of American defectors, that the
hunting and killing of American defectors was an SOG priority, that American defectors were in fact
killed, that a deadly nerve gas was dropped on a village base camp the night before SOG forces
arrived, and that more than one hundred bodies were found, some of them women and children. 
During the feature, several war-era photographs were shown. Plaintiffs Plancich, Minton, and
Kinsler, all members of SOG, appeared in some of the photos, but none was named in the broadcast. 
Plancich and Minton actually participated in Operation Tailwind, while Kinsler had already left
Vietnam by that time. A followup story was aired several days later.

 In the meantime, Time Magazine published a report the day after the first NewsStand program
aired. The content of the Time report was similar and this article was accompanied by six old
photographs. One showed thirteen soldiers posing for a group picture. Four were identified by name
and quoted in the captions. None of the plaintiffs was identified, quoted, or discussed in the article. 
Plancich claimed to be pictured in one of the photos; neither Minton nor Kinsler appeared in any of
them.

 In considering the defendants' motions for summary judgment, the federal trial court
explained that the claims of Plancich and Minton were governed by the law of Florida, while
Kinsler's claims were governed by Texas law. "Under both Florida and Texas law, an essential
element of a defamation claim is that the publication is 'of and concerning' the plaintiff." In re
CNN, MDL Case No. 1257, slip op. at 3, 2006 WL 2711744 *2. This is true regardless of whether
a plaintiff is a public official. In re CNN, MDL Case No. 1257, slip op. at 4, 2006 WL 2711744 *4. 
In granting summary judgment, the court emphasized that none of the plaintiffs was named, quoted,
or discussed in the broadcasts or the article. Id. While their photographs appeared on screen and
in print along with other SOG commandoes, they were not identified. Id. Their affiliation with SOG
did not serve to bootstrap media stories about impersonal government operations into defamatory
statements of and concerning the plaintiffs in particular. Id. 

 We find this analysis persuasive. The El Diario publication constituted an impersonal
criticism of corrupt border patrol agents. The dateline was McAllen, Texas--not El Paso. The
international bridge was identified as the Progresso, not the Bridge of the Americas. The conspiring
agents were Lizandro Martinez and Roberto Dominguez. The caption beneath Houseman's photo
refers to "agent" or "an agent" or "the agent." No complaint as to the accuracy of the translation has
been brought forward for review. It may well be true that some actual readers were mislead but we
conclude that a hypothetical reasonable reader would not be. See New Times, Inc. v. Isaacks, 146
S.W.3d 144, 157 (Tex. 2004), cert. denied, 545 U.S. 11105,125 S.Ct. 2557, 162 L.Ed.2d 276 (2005).
We affirm the judgment of the trial court below.


August 23, 2007 

 ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment
1. El Diario sought summary judgment on other grounds as well. Because the first issue for review is dispositive of the
appeal, we need not address the remainder.