

# NUMBER 13-22-00146-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TIFFANY CARLEN HURD,                                                          Appellant,

v.

PAUL BRYAN READING,                                                          Appellee.

### On appeal from the 413th District Court of Johnson County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Tiffany Carlen Hurd appeals from the trial court's denial of her motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. In two issues, Hurd argues that (1) the trial court erred in denying her motion to dismiss and (2) this Court should remand for Hurd to recover mandatory

attorney's fees. We affirm.

## I.  BACKGROUND[1]

On October 5, 2021, appellee Paul Bryan Reading filed his original petition against Hurd alleging causes of action for: (1) defamation (textual), libel, and slander; (2) defamation, libel, and slander per se; and (3) malice and exemplary damages. The petition also sought injunctive relief. Paul alleged that in March of 2021, he learned that Hurd had been publishing "false and defamatory statements on at least one social media platform," stating that Paul had committed the crime of hacking Hurd's personal and social media accounts. Paul alleged that Hurd publicly stated that Paul used his position as a Navy Officer to access Hurd's email, and personal and business social media accounts.

Hurd filed a TCPA motion to dismiss, arguing that her statements were protected under her right to free speech in connection with matters of public concern and her right to petition and right of association. Hurd argued that Paul, the husband of and campaign treasurer for local politician Katherine Reading, acted along side his wife to malign Hurd. Hurd's motion alleged that Paul and Katherine mocked and maligned Katherine's political opponents. She asserted that in pursuit of reelection in 2021 Paul and Katherine "attack[ed] candidate opponents and numerous citizens alike, including local internet business owner, reporter, and radio show host" Hurd. Hurd further alleged that during this "contentious election period," her radio station and business were "repeatedly and habitually attacked" causing her to "lose numerous personal and business owned

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another if there is "good cause" for the transfer).

electronic operational accounts, along with business and personal information." She explained that an "investigation" by an unnamed source concluded Paul and Katherine were responsible for the attack on her accounts. Accordingly, she stated in her motion "[n]othing in [her] post is false, no identifiable individual, much less [Paul] is referenced in it, and the words contained in that post are free election speech, specifically directed toward a matter of public concern . . . ."

Hurd further asserted in her motion to dismiss that Paul could not meet his burden to establish a prima facie case of defamation. Hurd's motion stated that Paul "has failed to produce even a scintilla of probative evidence to support his fanciful defamation claims, let alone" his claim of "$100,000–200,000 in undefined damages." Hurd's motion also raised affirmative defenses of substantial truth, qualified common law privilege, qualified privilege in a broadcast media, and that Paul is "libel-proof."

The parties filed several more pleadings in response to Hurd's motion to dismiss. After two trial court judges recused themselves from the case, a third judge was assigned and entered an order denying Hurd's motion to dismiss. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).

## II.    TCPA

### A.    Standard of Review & Applicable Law

The TCPA is intended to "protect[] citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). A party seeking dismissal under the TCPA has the initial burden to demonstrate that the "legal action is based on or is in response to . . . the

3

party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1). If the defendant meets this initial burden, then the plaintiff must establish by "clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal. *Id.* § 27.005(c). Even if the plaintiff makes this showing, the trial court must nevertheless dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the [defendant] is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Our review of a ruling on a TCPA motion to dismiss is de novo. *Entravision Commc'ns Corp. v. Salinas*, 487 S.W.3d 276, 281 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied).

## B.    Analysis

Though Hurd and Paul disagree about why the TCPA applies, neither party disputes its application in the underlying case. Parties may not judicially admit a question of law. *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.). Nor can they concede a question of law necessary to the proper disposition of an appeal. *Jackson Hotel Corp. v. Wichita Cnty. Appraisal Dist.*, 980 S.W.2d 879, 881 n.3 (Tex. App.—Fort Worth 1998, no pet.); *Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied) (citing *White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988)). Thus, in the course of our de novo review we must determine whether the TCPA applies to the underlying claims. The first question in our TCPA analysis is whether Paul's lawsuit is "based on[, relates to,] or is in response" to Hurd's free-speech rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). An "[e]xercise of the right of free speech" is

4

defined as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Communication" includes "the making or submitting of a statement or document in any form or medium, including . . . electronic." *Id.* § 27.001(1). Public-concern matters include statements regarding the commission of a crime. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 940 (Tex. App.—Tyler 2019, pet. denied) (holding that publication reporting criminal activity was a public-concern matter).

Hurd's Facebook posts and Facebook Messenger messages are communications. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (stating that the TCPA applies to both public and private communications). And Hurd's accusations that Paul committed cybercrimes are a matter of public concern. *See* TEX. PENAL CODE ANN. § 33.02(a) ("A person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."); *Brady*, 515 S.W.3d at 884; *MediaOne, L.L.C.*, 592 S.W.3d at 940. Because Hurd's statements were made in connection with a public-concern matter, it constituted an "[e]xercise of [her] right of free speech," as that term is defined in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3).

### 1. Defamation Per Se

Because the TCPA applies, we must now determine whether Paul has established "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). "Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with

the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593. The parties do not dispute that Hurd published the complained of statements to third parties. Accordingly, we address the remaining elements in turn to determine if Paul met his burden. Pleadings and evidence that establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff are sufficient to defeat a TCPA motion to dismiss. *Id.* at 591. To carry his burden, Paul need tender only the minimum amount of evidence to support a rational inference of each defamation-claim element. *Id.* at 591.

Texas recognizes the common-law rule that defamation is either per se or per quod. *See Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (citing *In re Lipsky*, 460 S.W.3d at 596). Defamation per se "involve[s] statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). Defamation per quod includes any defamatory statement that is not defamation per se*. Dall. Morning News*, 554 S.W.3d at 624.

To prove a defamation per se claim, Paul must prove only the first three defamation elements, as he would be entitled to recover general damages without proof of any specific loss. *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020) (holding when defamation is per se, the communication is actionable in and of itself without actual-damages proof); *In re Lipsky*, 460 S.W.3d at 593. Paul alleges that falsely accusing him of a crime constitutes defamation per se. We agree. *See In re Lipsky*, 460 S.W.3d at 596 (stating that accusing someone of a crime is an example

of defamation per se); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (op. on reh'g) (explaining that a false statement charging someone with committing a crime is defamatory per se). Hurd accused Paul of hacking into her business and personal accounts, in essence, she stated that he committed a cybercrime. Because defamation per se meets the second and fourth elements, to determine, then, whether Paul's defamation action survived Hurd's TCPA motion to dismiss, we look only for clear and specific evidence of the first and third elements. *See Innovative Block*, 603 S.W.3d at 418; *see also Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *3 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.).[2]

### a. False Statement

Hurd does not dispute the publication of her statements to third parties. Through his petition, his response to Hurd's TCPA motion, and his evidence attached thereto, Paul denies Hurd's accusations that he hacked into her accounts. Specifically, in his own affidavit, Paul asserts that he did not hack into Hurd's accounts, and although her statements insinuate there was a Naval investigation into his actions, Paul states in his affidavit that he contacted his chain of command and the base legal officer regarding Hurd's claims to determine that her claims were in fact false. Paul explained that he met with an attorney in the Staff Judge Advocate's Office who confirmed that there were no

---

[2] Hurd also argues that the statements were not "of and concerning" Paul. We disagree. The complained of statements repeatedly reference Paul's Naval position and his wife, Katherine. Accordingly, we find that each of the statements directly or indirectly references Paul. Furthermore, Paul provided affidavits of third parties who understood that the statements referred to Paul. *See Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 525 (Tex. App.—El Paso 2007, no pet.) ("A publication is 'of and concerning the plaintiff' if persons who knew and were acquainted with [the plaintiff] understood from viewing the publication that the defamatory matter referred to [the plaintiff].").

military investigations or evidence suggesting that Paul committed a cybercrime against Hurd. Given Paul's denial of the accusations coupled with the information from the Naval base's legal officer regarding the falsity of an open investigation against Paul, we find that he has presented some evidence that Hurd's statements were false. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (noting that where there were only two parties to the communication, the plaintiff could do no more than deny having made the statement); *see also Miller*, 2022 WL 60606, at *4 (explaining that appellant's denial of the criminal accusations against him was "some evidence" of falsity to satisfy the prima facie evidence burden under the TCPA). Paul has satisfied his burden of providing clear and specific evidence that Hurd published a false statement to a third party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

### b. Fault

As to the third element, whether the publications were made with the requisite degree of fault, Paul's status determines the fault degree applied. *See In re Lipsky*, 460 S.W.3d at 593. We must first determine whether Paul was considered a private individual or a public figure or official at the time that Hurd made her statements. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A private plaintiff must prove only that the defendant "was at least negligent," whereas a public official or public figure must establish actual malice. *Id.*

> For purposes of defamation liability
>
> There are two classes of "public figures": (1) general-purpose public figures, who are individuals who "achieve such pervasive fame or notoriety that [they] become[ ] public figure[s] for all purposes and in all contexts;" and (2) limited-purpose public figures, who are persons who "thrust themselves

8

to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . inviting attention and comment," who "inject[ ] [themselves] or [are] drawn into a particular public controversy . . . assum[ing] special prominence in the resolution of public questions," "thrusting [themselves] into the vortex of [a] public issue . . . [or] engag[ing] the public's attention in an attempt to influence its outcome.

*Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351, 352 (1974)).

Hurd argues that Paul, as campaign treasurer for his wife Katherine, is a limited-purpose public figure. To determine whether a person is a limited-purpose public figure, Texas courts apply a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and in the sense that people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *McLemore*, 978 S.W.2d at 571. To determine if the plaintiff's role in the controversy was more than tangential, a court examines whether the plaintiff (1) actually sought controversy, (2) had access to the media, and (3) voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *Klentzman*, 312 S.W.3d at 905 (citing *McLemore*, 978 S.W.2d at 572–73).

To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.

*Waldbaum v. Fairchild Pub., Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980). In this case, Hurd

9

alleges that Paul became a limited-purpose public figure because he inserted himself into the Burleson political landscape and publicly discussed political matters regarding certain candidates. Hurd attempts to tie in Paul's involvement with his wife's campaign to the alleged hacking of her accounts. Specifically, she claims that Paul hacked her accounts in order to prevent her from speaking out against Katherine. However, the mere fact that a person is married to a public figure, or serves as their campaign treasurer, does not place them into the category of limited-purpose public figure. *See Sloat v. Rathbun*, 513 S.W.3d 500, 508 (Tex. App.—Austin 2015, pet. dism'd) (citing *Scaccia v. Dayton Newspapers, Inc.*, 170 Ohio App.3d 471, 867 N.E.2d 874, 881 (2007) (stating that the fact that plaintiff was married to public official did not support conclusion that she voluntarily injected herself into public controversy)). Here, there was no public controversy that Paul inserted himself into which resulted in the allegedly defamatory comments by Hurd. In fact, Hurd attempts to state that the controversy itself is the aftermath of her allegedly defamatory statements, suggesting that the public was discussing her accusations against Paul making it a "public controversy." We find that there was no public controversy in which Paul injected himself into in order to be classified as a limited-purpose public figure. As such, Paul, as a private individual, need only prove that the defendant "was at least negligent." *McLemore*, 978 S.W.2d at 571. "In the defamation context, negligence is defined 'as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as a reasonably prudent person.'" *Day v. Fed'n of State Med. Bds. of U.S., Inc.*, 579 S.W.3d 810, 822 (Tex. App.—San Antonio 2019, pet. denied) (quoting *Harwood v. Gilroy*, No. 04-16-00652-CV, 2017 WL 2791321,

10

at *6 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.)).

Paul asserts that the accusations made by Hurd "have not the slightest factual support," and the falsehoods were knowingly made up by Hurd in an attempt to damage Paul's reputation. As Paul points out, while Hurd's statements reference documentation to support her allegations against Paul, Hurd never provided any such documentation. Paul argues that Hurd was negligent in publishing accusations that Paul committed a cybercrime using his Naval resources without verifying the truth of her statements. A reasonably prudent person would not publicly accuse someone of a crime without any knowledge of the claim's truth or falsity. *See Day*, 579 S.W.3d at 822 (explaining that the failure to investigate the truth or falsity of a statement before publication and the failure to act as a reasonably prudent person constitute negligence in the defamation context). Thus, viewing—as we must—the pleadings and evidence in the light most favorable to Paul, we conclude that the record contains sufficient evidence of Hurd's negligence to satisfy Paul's burden under the TCPA's second step. *See id.*

Hurd's first issue is overruled in part.

### III.    AFFIRMATIVE DEFENSES

If a plaintiff meets the burden of establishing by clear and specific evidence a prima facie case for each essential element of the claim in question, the court still must dismiss the "legal action" if the defendant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). Hurd argues that she clearly established the defenses of:

11

"qualified immunity, broadcasting media privilege, and substantial truth."[3]

## A.  Qualified Privilege

"A qualified privilege against defamation applies to good-faith communications 'upon any subject in which the author or the public has an interest or with respect to which the author has a duty to perform to another owing a corresponding duty.'" *Caracio v. Doe*, No. 05-19-00150-CV, 2020 WL 38827, at *5 (Tex. App.—Dallas Jan. 3, 2020, no pet.) (mem. op.) (internal citation omitted). A qualified privilege justifies a communication made without actual malice. *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 899 (Tex. 1970). To establish the defense of qualified privilege for purposes of meeting her TCPA burden, Hurd was required to establish as a matter of law that she did not make the purportedly defamatory statements with actual malice, defined as knowledge of the statements' falsity or with reckless disregard for the truth. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at *7 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.).

> Qualified privileges against defamation exist at common law when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication. A communication may also be conditionally privileged if it affects an important public interest.

*Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994) (internal citations omitted).

Paul presented evidence regarding the falsity of Hurd's claims against him. Hurd asserted that Paul received a cease-and-desist letter from the Navy for having used his

---

[3] While Hurd refers to "substantial truth" as an affirmative defense, she presents no argument or authority to support her defense. Instead, Hurd merely adds one sentence at the end of the affirmative defense section in her brief stating: "Finally, there is no proof that the subject statements are not true." We decline to address this affirmative defense argument for insufficient briefing. *See* TEX. R. APP. P. 38.1(i).

Naval resources to hack into Hurd's accounts. Paul, after meeting with his Navy commander as well as with an attorney in the Staff Judge Advocate's Office, confirmed that there were no military investigations or evidence suggesting that Paul committed a cybercrime against Hurd. Hurd stated that she was working with law enforcement and a cybercrime attorney to further investigate Paul's actions, however, no such investigation has been brought to light, nor has Hurd presented any information regarding such an investigation to support her accusations against Paul. From the record before us, Hurd has not established that she made her accusations against Paul in good faith, and the record contains evidence that she had knowledge of the falsity of her claims. As such, we find that the trial court did not err in failing to dismiss on Hurd's affirmative defense of qualified privilege.

## B.    Privileged Broadcaster

Hurd also generally asserts that her statements were made as a protected broadcaster as they "related to the breaches to her [business] media accounts." The Legislature has a due care provision for broadcasters, shielding them from liability unless the plaintiff proves the broadcaster failed to exercise due care to prevent publication of a defamatory statement. TEX. CIV. PRAC. & REM. CODE ANN. § 73.004. The provision requires that:

> A broadcaster is not liable in damages for a defamatory statement published or uttered in or as a part of a radio or television broadcast by one other than the broadcaster unless the complaining party proves that the broadcaster failed to exercise due care to prevent the publication or utterance of the statement in the broadcast.

*Id.* However, merely operating a community radio station does not grant Hurd the

13

protections she alleges. Hurd did not make these statements as part of her broadcast but rather through text messages and social media platforms. Further, we have already determined that Hurd's failed to demonstrate on the record before us that her statements were not made in good faith with regard to the falsity of her accusations. Accordingly, the trial court did not err in failing to dismiss on Hurd's affirmative defense of broadcaster liability.

We overrule Hurd's first issue as it relates to her affirmative defenses.

## IV. ATTORNEY'S FEES

By her second issue, Hurd argues that this matter should be remanded for a determination of reasonable attorney's fees owed to her. However, because we have found that the trial court did not err in failing to dismiss under the TCPA, we need not address this issue on appeal. *See id.* § 27.009.[4] We overrule Hurd's second issue.

## V. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Delivered and filed on the
29th day of February, 2024.

---

[4] Paul, in his appellate brief, suggests that this Court should award him attorney's fees, arguing that Hurd's TCPA motion to dismiss and appeal were frivolously filed. We disagree. Hurd presented clear and sufficient argument related to her motion to dismiss, citing authority, providing record citations, and formulating an argument supporting her position. While it was not successful, it does not rise to the level of frivolous. *See Compass Expl., Inc. v. B-E Drilling Co.*, 60 S.W.3d 273, 280 (Tex. App.—Waco 2001, no pet.).