**Thomas Alfred GILCREASE,
Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–99–00653–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 6, 2000.

**278**

Vincent D. Callahan, San Antonio, for Appellant.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, THOMAS RICKHOFF, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

A jury found Thomas Alfred Gilcrease ("Gilcrease") guilty of aggravated kidnapping, aggravated robbery, and aggravated sexual assault. The jury assessed his punishment for each conviction at life imprisonment and assessed $10,000 fines for the kidnapping and sexual assault convictions. In two points of error, Gilcrease asks us to consider: 1) whether the trial court erred in overruling his objection to the State's use of "bastard" during closing argument, and 2) whether the State intimidated Gilcrease's only witness into not testifying on his behalf. We find no error arising from Gilcrease's trial and affirm the trial court's judgment.

## BACKGROUND

Gilcrease abducted Veneta Searcy ("Searcy") from the parking lot of a neighborhood bar. He drove her to a shack. He threw her against a wall and offered her to his colleagues for their sexual fulfillment. After she began praying, Gilcrease's colleagues declined to engage in sexual acts with her. Gilcrease stated, "fher, I don't care," picked her up, removed most of her clothes (along with some of her personal belongings), and brought her into a separate room.

For the next thirteen hours, Gilcrease tried to penetrate Searcy with his penis. She fought back; he retaliated. Throughout the evening, he beat her into "white unconsciousness" with his hands, inserted a Cima bottle into her vagina and hit it until she was numb, bit her breasts until they bled, choked her until mucous came out of her nose, threatened to inject her with heroin to sedate her, and prevented her from leaving the room. Gilcrease told her that "I could take you on the south side and I could get a hundred dollars worth of heroin for you. And there's another group over there who don't give a sh-.... All we're going to do is bury you ... next to the other ten or twelve girls that we've already got buried." While carving into Searcy's back with her pocket knife, he stated, "this is neat." Gilcrease eventually overwhelmed Searcy and had sexual intercourse with her.

Searcy escaped the following morning. Almost naked, she ran to a nearby office building for help. Police later arrested Gilcrease.

## DISCUSSION

### 1. The State's Closing Argument

■ In his first point of error, Searcy argues that the State's use of "bastard" during closing argument was improper. The State said that "Ms. Searcy was selected by this bastard over here to be his victim." Gilcrease objected.

Gilcrease argues that the trial court erred in overruling his objection. He asserts that because no evidence existed to indicate he was born out of wedlock, the use of "bastard" was improper jury argument.

■ The only acceptable jury arguments are those "within the areas of: (1) summation of the evidence ... (2) reasonable deduction from the evidence ... (3) answer to argument of opposing counsel ... and (4) plea[s] for law enforcement...." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). Name calling and curse words, however, have no place in the administration of justice. Such words offend the dignity of the court. A courtroom is not the street. The trial court should have sustained the objection and admonished the State's attorney. Jurors are wise enough to evaluate the credibility of the witnesses and the reliability of the evidence for themselves. They are prudent enough to be able to measure the demeanor of those who are in the court room. They can make conclusions about people for themselves. They do not need counsel's illegitimate attempt to demean the defendant. A courtroom is a sanctuary for rational, deliberate, and careful argument. Such language can be reversible error in the proper case. We turn now to whether this is such a case.

The State contends that "bastard" does not necessarily refer to a person born out of wedlock. *See* THE CONCISE OXFORD DICTIONARY 73 (7th ed.1982) (defining "bastard," in part, as "disliked or unfortunate person"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 134 (1991) (defining "bastard," in part, as "an offensive or disagreeable person"). According to the State, because Gilcrease engaged in objectively despicable activity, the use of "bastard" was proper jury argument because it amounted to a proper and reasonable deduction from the evidence. The State also argues that it was a proper characterization of Gilcrease.

■ Remarks that fall outside the permissible bounds of jury argument are not constitutional errors. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998); *see also Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000). Such remarks constitute "other errors" that fall within Texas Rule of Appellate Procedure 44.2(b). *See Mosley*, 983 S.W.2d at 259. We must disregard error that does not affect the accused's substantial rights. *See* TEX.R.APP. P. 44.2(b). To determine if the State's improper argument affected Gilcrease's substantial rights, we look to three factors: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *See Mosley*, 983 S.W.2d at 259 (citing *United States v. Millar*, 79 F.3d 338, 343 (2nd Cir.1996); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir.1994)).

In the present case, the State labeled Gilcrease a "bastard" once. After defense counsel's objection was overruled, however, the State did not continue to engage in name calling. Aside from the misconduct, the testimony and forensic evidence are overwhelming of Gilcrease's guilt. No evidence exists to support Gilcrease's theory that he and Searcy engaged in consensual sex or that she had left with Gilcrease voluntarily. The State's behavior is not excused, but in this case, did not cause a wrongful verdict to be rendered.

### 2. Did the State Intimidate Gilcrease's Witness ?

■ In his second point of error, Gilcrease alleges that the State intimidated his only witness into not testifying. Interference by the State with a defense witness's "free and unhampered choice to testify amounts to a violation of due process." *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir.1998).

■ After the State rested, Gilcrease attempted to call a Florentino Adame ("Adame") to support its theory that Gilcrease and Searcy had engaged in consen-

sual sex. Through his attorney, Adame invoked his Fifth Amendment right not to testify in this case. Gilcrease then rested. Later, the State and Gilcrease presented additional argument to the trial court:

> DEFENSE COUNSEL: Today the Defense called Florentino Adame to testify. His attorney was here and present for him. Both he and his attorney had agreed that he would testify to the statement that he made last October 28, 1998, or 29th, 1998[sic]. And essentially what he said in that statement that he would testify to was, that he had seen Thomas and the woman on the bed.

> "One time I saw them having sex, the other times they were just kind of laying on the bed and talking like lovers do. *I did not see what the woman looked like.* I never saw the woman leave."

> And shortly thereafter the State informed the attorney for Mr. Adame that if he did testify he would likely face charges of theft or robbery, and under those circumstances he—- at that point he decided to invoke his Fifth Amendment privilege and he did not testify.

> . . . .

> DEFENSE COUNSEL: We feel like our client's due process rights were violated and that this was the only defense witness that was called. This was the only defense witness that we had. And that he refused to testify based on fact that the prosecutor had threatened him with filing charges against him for theft. . . .

> THE STATE: I just want to correct one thing. Just to clarify, the attorney for Florentino Adame asked me what he could be charged with. *I said he could be charged with possession of stolen property, because in his voluntary statement that he gave to the police he admitted to knowingly taking that jewelry from somebody with the knowledge that it had been stolen from the victim.*

(emphasis added).

The record does not reveal proof of the State's attempt to intimidate Gilcrease's witness. All we have before us is argument of counsel. The attorney for Gilcrease charged that the State intimidated the witness. The State responded it was simply answering the attorney's question. The trial judge was in the best position to consider the unsubstantiated claim by Gilcrease's counsel that Adame felt intimidated. Gilcrease did not introduce any evidentiary proof, at trial or in his motion for new trial, that Adame was intimidated. We overrule Gilcrease's second point of error.

### CONCLUSION

We affirm the trial court's judgment.