NO. 07-02-0184-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JULY 2, 2003


______________________________



ARIE SHALEV
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE COUNTY CRIMINAL COURT AT LAW NO. 13 OF HARRIS COUNTY;



NO. 1058728; HON. MARK ATKINSON, PRESIDING


_______________________________





MEMORANDUM OPINION


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

 Arie Shalev (appellant) appeals his conviction for driving while intoxicated (DWI). 
Via two issues, he contends that 1) the trial court erred by admitting evidence regarding
the horizontal gaze nystagmus (HGN) field sobriety test administered to him by one of two
officers and 2) he was denied the effective assistance of counsel. We affirm the judgment. 


Issue One -- HGN Testimony


 Appellant initially contends that the trial court erred in admitting the testimony of
Officer Maynor regarding his administration of the HGN test and appellant's performance
of same. This was purportedly error because the officer was not an expert in the area. 
Furthermore, he purportedly was not an expert because he had yet to receive his
practitioner's certification from the State of Texas to administer the test. We overrule the
issue for the following reason.

 Assuming arguendo that admission of the testimony was improper, we find the trial
court's decision harmless. Another officer administered his own HGN test upon appellant
while a third administered upon him other field sobriety tests. Both testified about their
respective acts and the results derived. Both also opined, before the jury, that appellant
was intoxicated. Furthermore, appellant does not complain on appeal about the admission
of that particular evidence. And, to it we add the evidence illustrating that appellant 1) had
a strong odor of alcohol on his breath, 2) slurred his speech, 3) had to lean on the car to
keep his balance, 4) staggered when he walked, and 5) admitted to drinking at least two
glasses of wine shortly before his arrest. So, given that Maynor's testimony was redundant
of that provided by Officer Robinson and the overwhelming amount of other evidence
indicative of appellant's intoxication, we conclude that the decision to admit Maynor's
testimony had no effect on any of his substantial rights. See Tex. R. App. P. 44.2(b)
(stating that error not of constitutional magnitude must affect a substantial right before it
can be the basis for reversal); Couchman v. State, 3 S.W.3d 155, 160-61 (Tex. App.--Fort
Worth 1999, pet. ref'd) (refusing to find harmful error when the evidence about which
appellant complained was cumulative of other, properly admitted, evidence on the same
subject); Gilcrease v. State, 32 S.W.3d 277, 279 (Tex. App.--San Antonio 2000, pet. ref'd)
(refusing to find harm when the evidence of guilt was overwhelming).

Issues Two and Three


 In his next, and last two issues, appellant contends that he was denied the effective
assistance of counsel. This allegedly occurred in two respects. First, counsel supposedly
acted improperly by failing to object when Officer Robinson allegedly testified that the
manner in which appellant performed the HGN test illustrated that his blood alcohol level
exceeded the legal limit. Second, counsel was allegedly deficient by failing to object to that
testimony of Officer Maynor which "aided in the inescapable conclusion that appellant's
[blood alcohol content] was at least above the legal limit based on the results of the HGN
test." We overrule the issues.

 Regarding the first act complained of, Officer Robinson did not testify as suggested
by appellant. Admittedly, the officer did state that "through the results of the HGN, I can
tell you what the person's alcohol level would be . . . ." Yet, trial counsel immediately
objected to his doing that. At that point, the witness said 1) "I'm not going to say it," though
he believed he "could have" and 2) "that would tell me that he would be a - - if he was
above or below the legal limit." (Emphasis added). Nonetheless, the officer never
proffered an opinion about what appellant's blood alcohol content was based upon
appellant's performance on the HGN test. And, given that the witness never so testified,
trial counsel cannot be held deficient by failing to object to evidence that was never offered.

 Regarding the second instance of purported deficiency, appellant again
mischaracterizes the record. Maynor did not testify that a suspect's performance of the
HGN test in a certain manner illustrates that the suspect has a particular blood alcohol
level. He simply stated that 1) to be certified by the State to perform HGN tests, an officer
must administer 35 such tests, the results of which must be confirmed by subsequent
"breathalyzer test[s]" and 2) "[i]n other words, if I test a person I believed was intoxicated,
I would have to have a breathalyzer test to back that up on my certification that we send
off to the State to be certified." As can be readily seen, Maynor was merely describing the
steps required in obtaining one's certification. He was not purporting to suggest that one's
performing an HGN test in a certain way means that he has a blood alcohol content
exceeding the legal limit. Nor may either of his comments be rationally construed as
indicating as much. At best, the comments may be interpreted as illustrating that 1) breath
analysis must confirm one's opinion about another's intoxication garnered through
application of the HGN test before one can be certified to administer the HGN test and 2)
breath analysis may or may not confirm that opinion. So, because the testimony at issue
was not of the ilk described by appellant, we refuse to hold trial counsel deficient for failing
to object to evidence never offered. 

 Accordingly, the judgment is affirmed.


 Brian Quinn

 Justice


Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2003). 



ned a form acknowledging
receipt of the warnings. Detective Terrance Tracy then took a written statement from
appellant which was completed at 6:05 a.m. About 9:25 a.m., Municipal Judge Donna
Clayton came to the police station. A detailed discussion with appellant resulted in her
being convinced that appellant understood the nature and contents of her confession and,
accordingly, Judge Clayton signed the instrument. There was testimony that although
appellant was alone in the room for some periods of time, detectives and other personnel
were in close proximity.

 Initially, appellant was charged as a juvenile with engaging in delinquent conduct. 
Subsequently, after the Potter County Court at Law waived its jurisdiction, the case was
transferred to the 320th District Court of Potter County, and appellant was indicted for
murder. It is that transfer that appellant challenges in her first issue. In doing so,
appellant claims the State neither pled nor presented proof that the Potter County Court
at Law "had been 'designated' a juvenile court." Specifically, she contends it is a fact issue
as to whether that court had been designated a juvenile court, and because of this, "the
designation by the juvenile board of Potter County must have been alleged and
affirmatively proven" in order for jurisdiction to attach. She bases that argument on the
premise that "a juvenile court is not one of general jurisdiction, [and] its power to act is
derived exclusively from the statutory authority taken from the Texas Family Code." In
support of her proposition that factual proof is required, she cites and relies on In the
Matter of A.S., 875 S.W.2d 402, 403 (Tex.App.--Corpus Christi 1994, no writ).

 Appellant's second issue centers around the fact that she was not taken to the
police department from the crime scene until 45 to 50 minutes after the police arrived. The
ultimate holding of the Court of Criminal Appeals is that the 45-minute delay in taking
appellant to the police station cannot be construed as unnecessary. (2) Specifically, the
Court of Criminal Appeals deemed the 45-minute delay as "de minimis" and "necessary." 
In reaching its decision, that court reasoned that law enforcement was engaged in "trying
to save the victim's life," investigating the stabbing, and securing the scene. The Court of
Criminal Appeals believed that six officers, paramedics, Amarillo Medical Services, and
the Fire Department were "necessary" in order to properly carry out the listed tasks. Thus,
under these circumstances, "unnecessary delay" is not present, and appellant's second
issue is overruled.

 Appellant's third issue contention is the trial court erred in refusing to submit the
defense of necessity pursuant to section 9.22 of the Penal Code. That section provides:

 § 9.22. Necessity

 Conduct is justified if:


 (1) the actor reasonably believes the conduct is immediately
necessary to avoid imminent harm;


 (2) the desirability and urgency of avoiding the harm clearly outweigh,
according to ordinary standards of reasonableness, the harm sought to be
prevented by the law proscribing the conduct; and


 (3) a legislative purpose to exclude the justification claimed for the
conduct does not otherwise plainly appear.


Tex. Penal Code Ann. § 9.22 (Vernon 1994).

 In contending she was entitled to submission of the defense, appellant relies on the
testimony of herself and Dr. Anthony Arden. Dr. Arden, a psychologist, was called by the
defense as an expert witness. In her testimony, appellant averred that she stabbed the
victim "[b]ecause I didn't want him to be with my little sister and I didn't want him to come
into my room anymore. I wanted him to stop." Dr. Arden testified that appellant believed
Winegar was forcing himself sexually upon her sister and she sought to provide an
immediate defense for herself and her sister. He also testified that in his professional
opinion, appellant reasonably believed her conduct was necessary to avoid imminent harm
to herself and her sister.

 In support of her proposition that she was entitled to the charge, appellant claims
that the central issue of material fact concerning her defense was whether she reasonably
believed that stabbing Winegar was immediately necessary to avoid imminent harm to her
and her sister. By being deprived of the charge, she reasons, her defense was
irretrievably harmed. In her argument, she points out that in situations where the defense
is raised, the reasonableness of an accused's belief is a question of fact to be determined
by the fact finder. Egger v. State, 817 S.W.2d 183, 185 (Tex.App.--El Paso 1991, pet.
ref'd), citing Fitzgerald v. State, 782 S.W.2d 876, 885 (Tex.Crim.App. 1990), and Sanders
v. State, 707 S.W.2d 78, 79-80 (Tex.Crim.App. 1986). Furthermore, she posits, the
reasonableness of an accused's belief must be viewed from the defendant's viewpoint at
the time she acted. Juarez v. State, 886 S.W.2d 511, 514 (Tex.App.--Houston [1st Dist.]
1984, pet. ref'd). In response, the State contends any belief by appellant that her action
was necessary was unreasonable as a matter of law.

 Under the statute, to be entitled to the defense, appellant would have to
demonstrate that she met all three of the statutory elements of the defense. Under this
record, appellant has failed to show her action was immediately necessary to avoid
imminent harm. According to her trial testimony, Winegar told appellant to go to bed at
about 12:00 a.m. About three or four minutes later, Kenna came to her room and told her
it was too late to be up and not to smart off to anyone in the house. At approximately 1:40
a.m., appellant got up and went to the kitchen, where she got a glass of water and a knife,
which she carried back to her bedroom. She put the knife on a chair and got back in bed. 
At that time, she testified that Winegar had not been in her room. 

 After her return, she said, Winegar came into her room and "pulled back the covers
and he reached out to touch me and I rolled over onto my back." She testified he stayed
"probably three minutes" and then went into her sister's room and, as she lay on the bed,
she thought about killing Winegar. About ten minutes before 3:00 a.m., she went into her
mother's bedroom and stabbed Winegar. Although she admitted she had stabbed
Winegar, she averred that the last thing she remembered was walking into the room, "him
rolling over," and then being on the telephone. She acknowledged she had written a letter
to a friend dated January 7, 1996, in which she said, "I made it home okay and I haven't
killed Neal yet." This record, particularly in view of the time lapses it shows, is not
sufficient to show that at the time appellant stabbed Winegar, killing him was immediately
necessary to avoid imminent harm to herself or another person. Because the first
condition of the necessity defense was not shown, the trial court did not err in refusing its
submission. Appellant's third issue is overruled.

 Because appellant discusses her fourth and fifth issue contentions together, we will
do likewise. In these issues, she posits that the trial court erred in refusing to submit jury
charges on self-defense and defense of third persons. Self-defense is codified in section
9.31(a) of the Penal Code, and provides:

 § 9.31. Self-Defense

 Except as provided in subsection (b) of this section, a person is justified in
using force against another when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other's use
or attempted use of unlawful force.


Tex. Penal Code Ann. § 9.31(a) (Vernon Supp. 2001).

 The second, defense of other persons, is found in section 9.32 of the Penal Code,
which provides:

 § 9.32. Deadly Force in Defense of Person

 A person is justified in using deadly force against another:


 (1) if he would be justified in using force against the other under Section
9.31;


 (2) if a reasonable person in the actor's situation would not have retreated;
and


 (3) when and to the degree he reasonably believes the deadly force is
immediately necessary;


 (A) to protect himself against the other's use or attempted use of
unlawful deadly force; or


 (B) to prevent the other's imminent commission of aggravated
kidnapping, murder, sexual assault, aggravated sexual assault, robbery or
aggravated robbery. 


Tex. Penal Code Ann. § 9.32 (Vernon Supp. 2001).

 Appellant claimed at trial that Winegar was sexually abusing her sister, and she was
afraid he would abuse her next. She testified that Winegar made her uncomfortable and
she did not like the way he looked at her. Even though her sister denied it, as we have
noted, appellant testified, and told Dr. Arden, that Winegar had gone into her sister's room
the night he was killed and appellant had heard the steel springs on her sister's bed
squeak. 

 For the reasons we have discussed in connection with appellant's third issue, there
was no evidence showing the immediacy of any threat posed by the victim. Even under
appellant's testimony, Winegar was asleep at the time he was stabbed and could not have
presented an immediate threat. That being true, appellant was not entitled to either a self-defense or defense of a third person charge. Her fourth and fifth issues are overruled.

 In her sixth issue, appellant contends the trial court erred at the punishment stage
of trial in refusing to submit the issue of whether the offense was committed under the
influence of sudden passion arising from adequate cause pursuant to section 19.02(d) of
the Penal Code. To be entitled to the submission of that issue, of course, there must be
evidence that she acted under the influence of sudden passion arising from adequate
cause. "Adequate cause" is a "cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 1994). "Sudden
passion" is defined as "passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion arises at the time
of the offense and is not solely the result of former provocation." Tex. Penal Code Ann.
§ 19.02(a)(2) (Vernon 1994).

 In support of her contention under this issue, appellant points to her trial testimony
wherein she is asked why she stabbed the victim, and she responded:

 Because I didn't want him to be with my little sister and I didn't want him to
come into my room anymore. I wanted him to stop.


* * *



 I wanted him to stop molesting my little sister and I didn't want him to come
after me. I was afraid that he was going to try to be sexual with me and I
didn't want him to. When he came into my room, I knew he was going to try. 
I was afraid of him. I was afraid for my little sister. And no one helped me. 
No one cared what I had to say. No one would listen. My own mother didn't
even listen. I just wanted it to be over.


 She also refers to the testimony of Dr. Arden, who concluded that appellant was
suffering from post-traumatic stress disorder because "she was sexually abused and lived
in sexual terror over time with a sexual perpetrator." As additional support for her
proposition that she was entitled to the sudden passion submission, appellant points to Dr.
Arden's testimony that she told him that "an hour or so before the stabbing, that she was
asleep in her bedroom . . . laying facing the wall. She began to have a sense that there
was someone in the room. She rolled over, still keeping her eyes closed for fear of what
she might see, she felt the covers removed from her. She felt someone reach down and
touch her vaginally." After this, "she lay virtually paralyzed in her bed, listening with great
intensity to what might happen then, and she heard Mr. Winegar (the victim) enter
[Sueletta's] room, she heard the steel bed springs in [Sueletta's] room." Although
appellant did not testify about this at trial, the doctor concluded she was suffering from
post-traumatic stress disorder and memories about her own sexual abuse were
disassociated, i.e., they were removed from her conscious awareness.

 Even viewed favorably to appellant, that evidence does not show she acted under
the requisite immediate influence of sudden passion. Appellant admitted in her trial
testimony that she had taken a knife from the kitchen, then returned to her room and set
the knife in a chair. When asked by several people whether Winegar had ever sexually
abused her, she denied it. Dr. Arden's explanation for this was that she had lost her
memory of this event due to post-traumatic stress disorder and only remembered it during
a "flashback." This type of evidence is not sufficient to show that appellant stabbed the
victim directly as a result of, and arising out of, provocation at the time of the offense. See
Hobson v. State, 644 S.W.2d 473, 478 (Tex.Crim.App. 1983). Passion solely arising from
a former provocation will not qualify. Id. Appellant's sixth issue is overruled.

 In her seventh and final issue, appellant claims the trial court abused its discretion
in admitting prosecution exhibits 4 and 13 because they were "gruesome, full-color
autopsy photographs" which had no relevance to any issue in the case. Moreover, she
argues, the exhibits "would leave a person of normal sensibilities with the impression that
Appellant almost cut the deceased in half with a chain saw as opposed to stabbing him
one time in the heart." Predictably, in response, the State claims the photographs aided
the jury in understanding Dr. Frost's testimony.

 In explaining the four admitted photographs out of the 19 tendered, Dr. Frost
testified:

 Well, State's Exhibit 13 is a depiction of the large medical incision of the
chest, the thoracostomy incision.

 

 Exhibit[s] 23 and 24 both display the injury to the heart, the stab wound to
the chest also penetrated the right ventricle of the heart, one of the heart
chambers, and caused a defect there a little over an inch in length.

 

 And Exhibit 4 is just another view of the stab wound and the chest wall
incision from a greater distance. . . . 

 

 A trial court's decision to admit a particular piece of evidence, over objection, is
measured by an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372, 379
(Tex.Crim.App. 1990) (on reh'g). In turn, whether it abused its discretion depends on
whether the decision fell within the zone of reasonable disagreement. Id. at 391-92. 
Admissible evidence must possess some probative value and that probative value must
not be substantially outweighed by its inflammatory nature. Long v. State, 823 S.W.2d
259, 272 (Tex.Crim.App. 1991), cert. denied, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d
910 (1992). Furthermore, indicia such as gruesomeness, number, detail, size, color, and
perspective are relevant in assessing whether an abuse of discretion is shown. Santellan
v. State, 939 S.W.2d 155, 171-72 (Tex.Crim.App. 1997); Narvaiz v. State, 840 S.W.2d 415,
429 (Tex.Crim.App. 1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993). 

 As we have noted, appellant only challenges two of the four photographs admitted. 
Exhibit 4 is a photo of Winegar that shows his body from the top of his head to his thigh
area. According to Dr. Frost, the exhibit shows the stab wound from a view farther back
than just the heart itself, as in State's Exhibit 23 and 24. While it does show a long cut
across his chest that was done for medical purposes, it is not especially gruesome and is
not redundant of any other photograph. Exhibit 13, the other challenged photo, is a close-up of the heart as seen through the cut across the victim's chest, and it also shows the
stab wound which appears right above the heart. The photograph has a ruler right next
to the stab wound which shows the length of the wound. While it is true that pictures
showing a homicide victim are to some extent gruesome, we cannot say the pictures were
"so horrifying or appalling that a juror of normal sensitivity would necessarily encounter
difficulty rationally deciding the critical issues of the case after viewing them." Narvaiz, 840
S.W.2d at 429. That being so, we cannot say the record shows the trial court abused its
discretion in admitting the photographs. Appellant's seventh issue is overruled.

 In final summary, all of appellant's issues are overruled, her motion for rehearing
is overruled, and the judgment of the trial court is affirmed. 


 John T. Boyd

 Chief Justice

Publish. 
1. Appellant testified that she had been ironing in her room and Winegar had come
in and told her to go to bed because she was making too much noise.
2. Determinations of what constitutes "unnecessary delay" fall within the realm of
section 52.02(a)(2) of the Texas Family Code and are determined on a case-by-case
basis.