

# NUMBER 13-21-00241-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

AZTECA INTERNATIONAL CORPORATION
D/B/A AZTECA AMERICA, STATIONS
GROUP, LLC, NORTHSTAR MCALLEN
LICENSE, LLC, TV AZTECA, S.A.B. DE
C.V., PUBLIMAX, S.A. DE C.V. AND
PATRICA CHAPOY,                                                    Appellants,

v.

GLORIA DE LOS ANGELES TREVINO RUIZ,
ANGEL GABRIEL DE JESUS TREVINO,
AND ARMANDO ISMAEL GOMEZ MARTINEZ,                  Appellees.

---

On appeal from the 139th District Court
of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

Before Justices Longoria, Hinojosa, and Silva
Memorandum Opinion by Justice Longoria

Appellants Azteca International Corporation d/b/a Azteca America, Stations Group, LLC, Northstar McAllen License, LLC, TV Azteca, S.A.B. de C.V., Publimax, S.A. de C.V., and Patricia Chapoy appeal from the trial court's "implicit denial" of their combined motion for summary judgment and motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA). We affirm in part and reverse and render in part.

## I.    BACKGROUND

This cause has been before this Court in a prior appeal. *See TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 611 S.W.3d 24 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). We previously described the background and procedural history as follows:

> Appellee Gloria de los Angeles Trevino Ruiz (Trevi), a prominent Mexican recording artist, was arrested and jailed in Brazil and Mexico on sex-trafficking charges. After more than four years, Trevi was released in 2004 when her charges were dismissed. Trevi then moved with her family to McAllen, Texas.
>
> On April 14, 2009, Trevi, individually and on behalf of her [then] minor child, [appellee Angel Gabriel de Jesus Trevino (Gabriel)], and appellee Armando Ismael Gomez Martinez [(Gomez)], Trevi's husband, brought suit against appellants for defamation, libel per se, slander, defamation per se, business disparagement, civil conspiracy, and tortious interference with existing and prospective contracts and business relationships. Appellees based their petition on allegations that "in late 2008 to early 2009" appellants "aired or caused to be aired television programming" which contained "several defamatory statements about [Trevi]." Appellees alleged that appellants published and re-published "allegations from which [Trevi] had been exonerated."
>
> Appellants TV Azteca, S.A.B. de C.V., Publimax, S.A. de C.V., and Chapoy (Mexican Azteca Parties) responded by filing special appearances in which they contested personal jurisdiction. The remaining appellants, Azteca International Corporation, Stations Group, LLC, and Northstar McAllen License, LLC (U.S. Azteca Parties), filed answers and special exceptions. After the filing of appellees' fourth amended petition, the Mexican Azteca Parties filed special exceptions. The Mexican Azteca Parties and appellees entered into a Rule 11 agreement, that provided, inter

2

> alia, that the special exceptions would be withdrawn and that the appellees would file a fifth amended petition with more specificity.
>
> Subsequently, appellees filed their fifth amended petition which identified twenty-two allegedly defamatory statements. Appellants filed a motion to dismiss pursuant to the [TCPA]. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. The trial court denied the motion to dismiss.

*Id.* at 27. In the previous appeal, appellants asserted the trial court erred in not granting their TCPA motion. *See id.* This Court found that of the twenty-two allegedly defamatory statements pleaded in the fifth amended petition, the seven "newly pleaded" statements (statements 1, 2, 8, 9, 12, 13, and 18) were alleged outside of the statute of limitations (SOL) and should be dismissed. *See id.* at 33. As to the remaining fourteen statements which had previously been pleaded in the fourth amended petition, we held that appellants' TCPA motion to dismiss was untimely. *See id.* at 31. As such, we reversed the trial court's denial of the TCPA motion as to the seven out-of-time statements and remanded for further proceedings. *See id.* at 35–36.

After our opinion issued, appellants filed a motion for summary judgment, which was subsequently amended after responses and motions were filed. Appellees then filed their sixth amended petition, in which they re-alleged the twenty-two statements from their fifth amended petition and alleged nine newly pleaded allegedly defamatory statements. Appellants filed their combined TCPA motion to dismiss the nine newly pleaded statements and motion for summary judgment on all claims.

Following a hearing, the trial court signed an order in which it stated:

> The Court finds as a matter of fact and concludes as a matter of law that there is good cause[,] and it is in the interests of justice to defer ruling on the [m]otion until the close of evidence at trial. Therefore, the [m]otion is

3

taken under submission and will be ruled on after the close of evidence at trial.

It is from that order that appellants bring this interlocutory appeal.

## II.  JURISDICTION

We first address appellees' contention that this Court lacks jurisdiction over this appeal because the trial court did not expressly deny appellants' motion. Section 51.014 of the Texas Civil Practice and Remedies Code governs this interlocutory appeal, stating:

> (a) A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that:
>
> . . . .
>
> > (6)  denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;
>
> . . . .
>
> > (12)  denies a motion to dismiss filed under Section 27.003[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6), (12). Appellees argue that no order was entered denying appellants' motion because the trial court deferred its ruling; thus, no appeal could be taken from the order. Appellants respond that the trial court's deferred ruling on their motion until the close of evidence at trial was an implicit denial of the motion.

> Similar to the purpose of a plea to the jurisdiction, which is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation), the purpose of summary judgments in Texas is to eliminate patently unmeritorious claims and untenable defenses.

4

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (cleaned up). Because a summary judgment motion is intended to dispose of claims *prior* to hearing testimony or receiving evidence at trial, by suspending its ruling on appellants' summary judgment motion until "after the close of evidence at trial," the trial court implicitly denied the motion. *See Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex.App.—San Antonio 2000, no pet.) (stating a ruling is implicit if it is unexpressed, but capable of being understood from something else); *see also Guerra v. Alexander*, No. 04-09-00004-CV, 2010 WL 2103203, at *3 (Tex. App.—San Antonio May 26, 2010, pet. denied) (mem. op.) (finding trial court implicitly denied a motion for summary judgment when it proceeded to trial). Accordingly, having found an implicit denial of appellants' motion, we conclude we have jurisdiction over this interlocutory appeal.[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6), (12); TEX. R. APP. P. 33.1(a)(2)(A).

### III.    SUMMARY JUDGMENT & TCPA MOTION TO DISMISS

"The standard of review for denial of a summary judgment is the same as for the granting of a summary judgment." *Kaufman v. Islamic Soc. of Arlington*, 291 S.W.3d 130, 143–44 (Tex. App.—Fort Worth 2009, pet. denied) (first citing *Wethington v. Mann*, 172 S.W.3d 146, 148 (Tex. App.—Beaumont 2005, no pet.); and then citing *Associated Press v. Cook*, 17 S.W.3d 447, 451 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (deciding an interlocutory appeal filed under § 51.014(a)(6))). In a summary judgment case, the issue

---

[1] Appellees also argue that the trial court acted under its authority pursuant to the Texas Supreme Court's Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster, which allowed the trial court to "modify or suspend any and all deadlines and procedures . . . ." *Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021). While the trial court did mention the emergency order in a footnote in its order, this does not change our jurisdiction determination. The trial court's order did not modify or suspend any deadline or procedure, rather it deferred a ruling until "after the close of evidence at trial."

on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, we indulge every reasonable inference and take as true all evidence favorable to the nonmovant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *see Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

"The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. "To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003, .005. Under the first step, a movant seeking to prevail on a motion to dismiss under the TCPA has the burden to "show by a preponderance of the evidence that the [nonmovant's legal action] is based on, relates to, or is in response

6

to the movant's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Under the second step, if the trial court determines that the movant has met his burden to show that the TCPA applies, the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Even if the nonmovant presents a sufficient prima facie case, the trial court must dismiss the legal action "if the [movant] 'establishes by a preponderance of the evidence each essential element of a valid defense' to the [nonmovant's] claim."*ExxonMobil Pipeline Co.*, 512 S.W.3d at 899; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). In our prior opinion, we determined the TCPA applies in this matter. *See TV Azteca*, 611 S.W.3d at 32.

In reviewing trial court's ruling on a motion to dismiss under the TCPA, we apply a de novo standard of review. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). That is, we review de novo whether each party has met its respective burden under the TCPA's two-step dismissal mechanism. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

## A. Statute of Limitations

"A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a). Appellants assert that twenty-eight of the thirty-one alleged defamatory statements are barred by the SOL, having been pleaded more than a year after publication. Of the twenty-eight statements, we have previously

7

disposed of seven statements (statements 1, 2, 8, 9, 12, 13, and 18) as to all appellees and we will not readdress those statements herein. *See TV Azteca*, 611 S.W.3d at 33. Appellants argue on appeal that statements 3–7, 10, 11, 14–17, 19–21, and 25–31 are also barred by the one-year SOL as to appellees Trevi and Gomez, as each of the individual allegedly defamatory statements was published more than one year before appellees asserted them.

Appellees do not refute the SOL argument made by appellants against Trevi and Gomez; rather, they assert that the "claims should survive alongside Gabriel's." Citing no case law or authority for support, appellees essentially argue that appellants' burden to defend against these statements in relation to Gabriel is the same regardless of whether Trevi and Gomez are also alleging the claims, so "there is no reason to hold that [appellants] should *not* have to defend against" the claims as to all appellees. *See* TEX. R. APP. P. 38.1(i). While appellees attempt to argue this is the "practical conclusion," we disagree. The SOL is clear, and we find no case law or authority to suggest that a plaintiff can join another plaintiff's claims merely because the defendants will already be defending that claim. Accordingly, we find that the SOL barred appellees Trevi and Gomez from bringing claims related to statements 3–7, 10, 11, 14–17, 19–21, and 25–31. The trial court erred in not granting appellants' summary judgment motion as to those claims by Trevi and Gomez.

## B. Of and Concerning

"Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree

8

of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). Appellants allege that several of the statements are not "of and concerning" Gomez and/or Gabriel and therefore cannot be asserted by those appellees.

### 1. Statements 22–24

Appellants argue that statements 22–24 are not "of and concerning" Gomez or Gabriel. "A publication is 'of and concerning the plaintiff' if persons who knew and were acquainted with [the plaintiff] understood from viewing the publication that the defamatory matter referred to [the plaintiff]." *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 525 (Tex. App.—El Paso 2007, no pet.). Statement 22 reads:

> Televisa's part is a disgusting double standard, and I'm going to tell you why. Because they attack Julion [Alvarez] in this case. Yes, they accuse him of money laundering, but they have had judges [referring to Trevi] in that program [La Voz] that are much more dangerous criminals and criminals much more disgusting. It is worse that they [Televisa] have accepted other judges [Trevi] who have had much more important crimes that can damage much more their image as a brand than one who is accused of money laundering. Worse is the one [Trevi] who is accused of murder and other things.

(alteration in original). Appellees do not address whether statement 22 is "of and concerning" Gomez or Gabriel. In reviewing statement 22, there is no mention, directly or indirectly, of Gomez or Gabriel. Accordingly, as to Gomez and Gabriel, the trial court erred in not granting appellants' summary judgment motion as to statement 22.

Statement 23 reads:

> Many who are young do not remember or don't know about the case involving Trevi-Andrade in which, through the singer, the manager recruited young little girls to then abuse them. Gloria was the accused accomplice as it was shown that she helped convince these girls to join the clan and to submit to Sergio's sexual advances because it would open the doors to the world of fame.

Statement 24 reads:

> This is how a network of young girls got started in which there were rapes, pregnancies, forced abortions, physical abuse, terror, threats and more. Gloria and Sergio were detained, she was in prison for four years, eight months and eight days.

Appellees contend that statement 23 refers to Gomez, the lawyer in Trevi's criminal case, because it uses the words "the case" and statement 24 refers to Trevi's criminal case. We disagree. While appellees are not incorrect in pointing out the words used in the statements, the statements do not concern Gomez as it is not reasonably understood that these two statements were intended to refer to him. *See Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 894 (Tex. 1960) (stating that the false statement must point to the plaintiff). The allegedly defamatory statements are not referring to "the case" or to Gomez, directly or indirectly, but rather they are clearly referring to Trevi. Further, there is no mention or even mere reference to Gabriel in either statement. Accordingly, as to Gomez and Gabriel, the trial court erred in not granting appellants' summary judgment motion as to statements 23 and 24.

2.     **Statements 3–7, 10, 11, 14–17, 19–21, and 25–31**

Appellants argue that statements 3–7, 10, 11, 14–17, 19–21, and 25–29 are not "of and concerning" Gabriel. Appellees do not address this argument as to all of the statements; rather, they focus on the argument as it relates to statements 25–29. In our review of statements 3–7, 10, 11, 14–17, and 19–21 we find no reference to Gabriel,

either directly or indirectly. As to those statements, we find the trial court erred in not granting appellants' summary judgment motion.

We now turn to the statements first pled in appellees' sixth amended petition, statements 25–31. Each of these statements directly or indirectly references Gabriel. The statements directly relate to or mention: Trevi's "pregnancy" (statement 25), "Trevi's son" (statement 26), "insemination" of Trevi (statement 27), Trevi's pregnancy (statement 28), "Trevi's son" (statement 29), "Angel Gabriel" (statement 30), and "bastard son" (statement 31). Accordingly, the trial court did not err in not dismissing these statements as to Gabriel on "of and concerning" grounds.

## C.     Gabriel's Remaining Claims

Appellants contend that even if statements 23–31 are of and concerning Gabriel, they should have been dismissed because they are "not defamatory" or they are substantially true. "Whether a publication is capable of a defamatory meaning is initially a question of law for the court." *Allied Marketing Grp., Inc. v. Paramount Pictures Corp.*, 111 S.W.3d 168, 175 (Tex. App.—Eastland 2003, pet. denied). Allegedly defamatory statements must be construed "as a whole[,] in light of the surrounding circumstances[,] based upon how a person of ordinary intelligence would perceive the publication." *Id.* at 176; *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 681 (Tex. App.—El Paso 2001, no pet.). If a defamatory meaning may exist, then the publication is considered to be ambiguous and a jury must be allowed to determine whether an ordinary reader would perceive the statement as defamatory. *Allied Marketing Grp.*, 111 S.W.3d at 176. "The opinion of the plaintiff has no bearing on whether the words or statements are actually

11

defamatory." *Houseman*, 242 S.W.3d at 524 (citing *Harmon v. Corinthian Broadcasting*, No. C14-86-00168-CV, 1986 WL 9844, at *2 (Tex. App.—Houston [14th Dist.] Aug. 21, 1986, no writ.) (mem. op.)). "Where a publication is capable of two interpretations, one of which is defamatory, summary judgment is improper." *Id.* (citing *Harmon*, 1986 WL 9844, at *2).

Appellants assert that statements 25, 26, and 28 mention Trevi's pregnancy and the possible fathers of Gabriel, but they are "not defamatory." Each of the three statements discusses the manner in which Trevi was impregnated and implies that paternity is unknown. Statement 25 reads:

> I assure that the pregnancy [of Angel Gabriel] was the product of repeated sexual assault by Francisco Murapelo, delegate of the superindendency [sic] of th [sic] federal police.

(alteration in original).

Statement 26 reads:

> Three names have been mentioned as possible fathers of Trevi's son. One of them is Marcelo Borelli who is accused of raping her.

Statement 28 reads:

> We are going to a commercial. When we return, please do not leave, because the interview with the Brazilian mobster is coming, they were telling him that it was the drug dealer I interviewed up threw himself into Trevi (Pati Chapoy). Let's see how Trevi got pregnant (Pedro Sola). Interview with Marcelo Borelli, the drug trafficker who in in [sic] prison in Brazil, and who was blamed for Gloria Trevi's son, but he says that everything about the pen and the semen came from him. It was his idea (Aurora Valle).

(alterations in original).

Appellants contend that these three statements are not defamatory as to Gabriel because he "had no role in how he was conceived, those statements do not reflect on his reputation or character[, n]or do they impeach his honesty, integrity, or virtue."

As to statements 30 and 31, appellants argue that the statements "allegedly refer to Gabriel as a 'bastard'" but that "'bastard' in modern-day society is simply not defamatory because it does not damage that child's reputation or bear on that child's honesty, integrity, or virtue." Statement 30 reads:

[Speaking] of the bastard Angel Gabriel, who sired him?

(alteration in original).

Statement 31 reads :

[Trevi] is shameless, even while she was in prison she had sex with Adrade [sic] and that is how her bastard son was spawned.

(alteration in original).

Whether a publication is capable of a defamatory meaning is initially a question for the court. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) (citing *Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 655 (Tex. 1987)). But when a publication is of ambiguous or doubtful import, the jury must determine its meaning. *Id.* A statement is defamatory if it tends to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018); *Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.). "To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace." *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore*

13

*Servs., Inc.*, 441 S.W.3d 345, 356 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The statutory definition of libel is generally consistent with the understanding of defamation as stated in case law. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (defining "libel" as "defamation expressed in written or other graphic form that tends to . . . injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury").

Here, appellants assert that the statements are not defamatory to Gabriel as he had no role in his conception, nor is his reputation or character called into question. However, the sentiment or intent behind the statements could be construed as more than just a comment on his conception, but rather an indication that he was the product of sexual assault or rape, a sensitive accusation related to Gabriel's life. Because there are multiple ways to interpret the sentiment or intent of statements 25, 26, 28, 30, and 31, we conclude there is ambiguity, and a question of fact remains as to these statements for Gabriel. *See Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.). The trial court did not err in refusing to dismiss these statements as to Gabriel on these grounds.[2]

---

[2] We note that appellants assert that statements 23–31 are not defamatory as to Gabriel, however, we have already determined the trial court erred in not dismissing statements 23 and 24 as to Gabriel on "of and concerning grounds" so we do not readdress those statements here. Further, as to statement 27, appellants' argument flows directly from the prior "of and concerning" argument. Having already determined statement 27 is of and concerning Gabriel, we need not discuss that issue again. Additionally, statement 29 is not discussed specifically in this section. As such, we have not addressed statement 29 herein. *See* TEX. R. APP. P. 38.1(i); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) ("Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise.").

Alternatively, appellants argue that statements 30 and 31 are barred by the affirmative defense of substantial truth. A showing of substantial truth of defamatory words will defeat a defamation cause of action. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990) (holding broadcaster's establishing substantial truth of broadcast as matter of law defeated defamation action). The test of substantial truth is "whether the alleged defamatory statement was more damaging to [plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been." *Id.* at 16; *see Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (noting substantial truth doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details"). Appellants' argument is essentially that Gabriel is a "person born out of wedlock" and, by definition, a "bastard." *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "bastard" as "[a] person born out of wedlock" or "[a] child born to a married woman whose husband could not be or is otherwise proved not to be the father"). Because Gabriel falls within this definition, appellants contend that statements 30 and 31, which refer to him as a bastard, are substantially true. However, the term bastard has been defined in various ways, several with negative connotations. *See Gilcrease v. State*, 32 S.W.3d 277, 279 (Tex. App.—San Antonio 2000, pet. ref'd) (discussing various definitions of "bastard" including the Oxford Dictionary defining "bastard," in part, as "disliked or unfortunate person" and Webster's Dictionary defining "bastard," in part, as "an offensive or disagreeable person"). Accordingly, because a defamatory meaning may exist, it is within the province of a factfinder to determine whether an ordinary reader would perceive the statement as defamatory. *See Allied*, 111 S.W.3d at 176. The trial

15

court did not err in denying appellants' motion as to statements 30 and 31 as they apply to Gabriel.

## D.      Trevi's Remaining Claims

Statements 22–24 were not subject to dismissal under the SOL, however, appellants raised additional grounds for dismissal of these statements as to Trevi. Appellants argue that statement 22 should have been dismissed under the "group libel doctrine" and consists of "non-actionable rhetorical hyperbole," and statements 23 and 24 should have been dismissed under the "third-party allegation rule" and "fair report privilege."

### 1.      Group Libel Doctrine

Under the group libel doctrine, a plaintiff has no cause of action for a defamatory statement directed to some of, but less than, the entire group when there is nothing to single out the plaintiff. *Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 213 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Consequently, the plaintiff has no cause where the statement does not identify to which members it refers. *See id.*; *see also Wright v. Rosenbaum*, 344 S.W.2d 228, 231–33 (Tex. App.—Houston [1st Dist.] 1961, no writ) (holding that the statement that "one of the four ladies" stole a dress, without more, was not a slanderous statement to any one in particular).

In contrast, if a statement refers to all members of a small group, then individuals within that group can maintain a defamation claim. *See Sellards v. Express–News Corp.*, 702 S.W.2d 677, 680 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (holding claim of drug use and suicide construed to apply to everyone in car was actionable by one passenger); *Harvest House*, 190 S.W.3d at 214 (holding defamatory statement directed at group of individuals is actionable when statement infers all members of group participated in activity forming basis of defamation claim).

The focus of our inquiry is how the message can be perceived objectively by a reasonable person. *Harvest House*, 190 S.W.3d at 213. "[I]t is not necessary that every listener understand [the reference to the plaintiff], so long as there are some who reasonably do so." *Id.* A claim is

actionable "if the language of the publication and the surrounding circumstances are such that friends and acquaintances of the plaintiff recognize that the publication is about the plaintiff" when that recognition is objectively reasonable. *Id.* at 214.

*Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 651 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Statement 22, without the alterations added by appellees in their petition, reads:

Televisa's part is a disgusting double standard, and I'm going to tell you why. Because they attack Julion in this case. Yes, they accuse him of money laundering, but they have had judges in that program that are much more dangerous criminals and criminals much more disgusting. It is worse that they have accepted other judges who have had much more important crimes that can damage much more their image as a brand than one who is accused of money laundering. Worse is the one who is accused of murder and other things.

Here, appellants contend that there is nothing to single out Trevi as the judge being referred to in the statement. We disagree. There are specific indicators of a single judge being referred to, not a group. The statement specifically refers to one judge "who is accused of murder and other things." This is not a statement referring to a group of people. Accordingly, it does not fall within the group libel doctrine and the trial court did not err in failing to dismiss it as such.

### 2. Non-Actionable Rhetorical Hyperbole

Appellants assert that statement 22 should have been dismissed because it "consists of non-actionable rhetorical hyperbole." "[T]o be actionable, a statement must assert an objectively verifiable fact rather than an opinion." *Backes v. Misko*, 486 S.W.3d 7, 24 (Tex. App.—Dallas 2015, pet. denied). Here, the statement alleges that a judge on the television show is a "much more dangerous criminal" and "much more disgusting"

17

than someone accused of money laundering. It then goes on to state that the judge being discussed is "one who is accused of murder and other things." Whether or not a person is accused of murder is a statement that is capable of being proved true or false and is therefore not merely rhetorical hyperbole. We disagree with appellants' assertion as such and find that the trial court did not err in denying appellants' motion as to statement 22 in relation to Trevi.

### 3. Third-Party Allegation Rule and Fair Report Privilege

Generally, media outlets enjoy a privilege that protects publications describing official proceedings of public concern. TEX. CIV. PRAC. & REM. CODE [ANN.] § 73.002(a). If the report of the proceeding is substantially true—"a fair, true, and impartial account"—the publication is privileged and not actionable. *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016). And while the defendant must prove the applicability of the privilege, the plaintiff bears the burden to prove the report was false. *Id.*

Similarly, media outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense. TEX. CIV. PRAC. & REM. CODE [ANN.] § 73.005(b). And because this third-party-allegation rule—like the official-proceeding privilege—bears on substantial truth, the plaintiff has the burden under the Act to show falsity at the motion-to-dismiss stage.

*Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. 2019). Appellants contend that statements 23 and 24 should have been dismissed because they "are attributable to a third-party website, and they merely consist of the publisher's accurate reports of the allegations involved in criminal proceedings against Trevi and Andrade." Therefore, appellants argue it was appellees' burden to show falsity. Statement 23 reads:

Many who are young do not remember or don't know about the case involving Trevi-Andrade in which, through the singer, the manager recruited young little girls to then abuse them. Gloria was the accused accomplice as it was shown that she helped convince these girls to join the clan and to

18

submit to Sergio's sexual advances because it would open the doors to the world of fame.

Statement 24 reads:

This is how a network of young girls got started in which there were rapes, pregnancies, forced abortions, physical abuse, terror, threats and more. Gloria and Sergio were detained, she was in prison for four years, eight months and eight days.

In response, appellees argue that appellants' statements 23 and 24 did not "just accurately report allegations," but rather the statements made assertions beyond the allegations. We agree. Both statements contain language that goes beyond a reporting of allegations, both statements insert opinions as to the veracity of the allegations and what the writer of the statement believed the case proved, implying the guilt of Trevi. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner*, 38 S.W.3d at 115. "So even if a publication 'gets the details right but fails to put them in the proper context and thereby gets the story's "gist" wrong,' it may be liable for defamation." *Hall*, 579 S.W.3d at 380 (quoting *Turner*, 38 S.W.3d at 115). Each of the statements, taken as a whole, could be perceived as an implication that Trevi was guilty of the accusations made against her, rather than simply reporting the allegations. Accordingly, we find the trial court did not err in denying appellants' motion on these grounds.

## IV.    CONCLUSION

We reverse in part the trial court's order and render judgment dismissing all of Gomez's actions against appellants[3], dismissing Trevi's actions against appellants as they stem from statements 1–21 and 25–31, and dismissing Gabriel's actions as they stem from statements 1–24. We affirm the remainder of the trial court's order, maintaining statements 22–24 as to Trevi and statements 25–31 as to Gabriel.

NORA L. LONGORIA
Justice

Delivered and filed on the
29th day of December, 2022.

---

[3] Appellees' petition alleged derivative claims stemming from the alleged defamatory statements. Because we have dismissed all of Gomez's defamation claims, his other claims necessarily fail. *See Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 852 n.3 (Tex. 2005) ("[T]o the extent [plaintiff's] pleadings allege claims other th[a]n defamation [by using multifarious subtitles], they must stand or fall with his defamation claim.").